THE HONORABLE BRIAN D. LYNCH
Chapter 11
Hearing Date: January 11, 2018
Hearing Time: 9:30 a.m.
Response Date: January 8, 2018
Location: Tacoma, Courtroom I

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| In re: | Case No. 17-44721-BDL |
| OLYMPIA OFFICE, LLC, | MLMT2005-MCP1 WASHINGTON OFFICE PROPERTIES, LLC'S MOTION UNDER BANKRUPTCY CODE SECTIONS 105, 362(d)(1), 362(d)(2), 362(d)(4) AND 1112(b) FOR RELIEF FROM THE AUTOMATIC STAY OR IN THE ALTERNATIVE FOR DISMISSAL OF BANKRUPTCY CASES |
| Debtor. | |

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

SMRH:485085657.2

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................ 1

II.    FACTS ............................................................................................... 5

       A.      Debtors Pay $100,000 for the Unlawful Purported Transfer of the Properties. . 5

       B.      Debtors File for Bankruptcy on the Eve of Foreclosure. ................................... 7

       C.      Debtors' Bankruptcies Are Dismissed. ................................. 8

       D.      Debtors Act in Bad Faith After the NY Bankruptcies Are Dismissed. ............ 12

       E.      Noteholder is Owed over $46,613,166.93. ................................. 13

III.   DEBTORS FILED AND ARE PROSECUTING THESE CASES IN BAD FAITH, WARRANTING RELIEF FROM THE AUTOMATIC STAY AND DISMISSAL OF THESE CASES FOR CAUSE UNDER BANKRUPTCY CODE SECTIONS 362(d)(1) AND 1112(b) ................................. 13

IV.   IN REM RELIEF FROM THE AUTOMATIC STAY IS WARRANTED UNDER BANKRUPTCY CODE SECTION 362(d)(4) ................................. 20

V.    RELIEF FROM THE AUTOMATIC STAY IS WARRANTED UNDER BANKRUPTCY CODE SECTION 362(d)(2) ................................. 21

       A.      There Is No Equity in the Properties. ................................. 21

       B.      The Properties Are Not Necessary to an Effective Reorganization. ................ 22

VI.   THE COURT SHOULD GRANT THE MOTION AND AWARD IN REM RELIEF ................................. 23

VII.   CONCLUSION ................................. 24

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

SMRH:485085657.2

# **TABLE OF AUTHORITIES**

**Page(s)**

Cases

*In Re 266 Wash. Associates*
    141 B.R. 275 (Bankr. E.D.N.Y. 1992) ................................................... 22

*In Re Copy Crafters Quickprint, Inc.*
    92 B.R. 973 (Bankr. N.D.N.Y. 1988) ................................................... 14

*In Re Duncan & Forbes Develop., Inc.*
    368 B.R. 27 (Bankr. C.D. Cal. 2006) ................................................... 20

*In Re East-West Associates*
    106 B.R. 767 (S.D.N.Y. 1989) ................................................... 14

*In Re Hathaway*
    401 B.R. 477 (Bankr. Wash. 2009) ................................................... 9

*In Re HBA East, Inc.*
    87 B.R. 248 (Bankr. E.D.N.Y. 1988) ................................................... 14

*In Re Laguna Assocs. Ltd. P'ship*
    30 F.3d 734 (6th Cir. 1994) ................................................... 14

*In Re O'Koreeh-Bach*
    836 F.2d 1030 (6th Cir. 1988) ................................................... 14

*Pederson v. Potter*
    103 Wash.App. 62, 11 P.3d 833 (Wash. App. 2000) ................................................... 9

*Rein v. Providian Fin. Corp.*
    270 F.3d 895 (9th Cir. 2001) ................................................... 9

*In Re RYYZ, LLC*
    490 B.R. 29 (Bankr. E.D.N.Y. 2013) ................................................... 22

*In Re Sentry Park, Ltd.*
    87 B.R. 427 (Bankr. W.D. Tex. 1988) ................................................... 14

*In Re Woodridge North Apts., Ltd.*
    71 B.R. 189 (Bankr. N.D. Cal. 1987) ................................................... 22

Statutes

Bankruptcy Code § 105 ................................................... 1, 3, 5, 13, 23, 24

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

SMRH:485085657.2

Bankruptcy Code § 362(c)(3) ............................................................. 10, 18, 19

Bankruptcy Code § 362(d) .................................................................... 1, 5, 23

Bankruptcy Code § 362(d)(1) ........................................................ 1, 4, 13, 20

Bankruptcy Code § 362(d)(2) ........................................................ 1, 4, 21, 23

Bankruptcy Code § 362(d)(2)(A) .................................................................. 21

Bankruptcy Code § 362(d)(2)(B) .................................................................. 21

Bankruptcy Code § 362(d)(4) ........................................................ 1, 4, 20, 23

Bankruptcy Code § 1111(b) ........................................................................... 22

Bankruptcy Code § 1112(b) ...................................................... 1, 4, 5, 13, 20, 24

Bankruptcy Code § 1126(c) ..................................................................... 19, 23

Bankruptcy Code § 1129(a)(10) ................................................................... 23

Bankruptcy Code § 1129(a)(10) ................................................................... 22

Bankrutpcy Code § 1122 .............................................................................. 22

-iii-

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

SMRH:485085657.2

Secured Creditor MLMT 2005-MCP1 Washington Office Properties, LLC ("Noteholder") files this Motion Under Bankruptcy Code Sections 105, 362(d)(1), 362(d)(2), 362(d)(4) and 1112(b) for Relief From the Automatic Stay or in the Alternative for Dismissal of Bankruptcy Cases (the "Motion") against the above captioned debtor and affiliated debtors Olympia Office LLC ("Olympia"), WA Portfolio LLC, Mariners Portfolio LLC, and Seahawk Portfolio LLC (collectively, "Debtors") so that Noteholder may proceed with its non-judicial foreclosure sales (the "Foreclosures") of eight office properties in Washington State (the "Properties"). The Foreclosures have been scheduled and pending since October 2016 and delayed multiple times through multiple bankruptcy proceedings and state court proceedings seeking injunctive relief. In order to prevent further abuse of process and forum shopping by the Debtors, Noteholder respectfully requests that the Court grant the Motion under Bankruptcy Code Sections 105 and 362(d), lift the automatic stay (but not dismiss the cases), and provide *in rem* relief, including prohibiting Debtors from taking any action to interfere with the Foreclosures, including without limitation, transferring the Properties or filing further bankruptcy cases. Alternatively, if the Court is inclined to dismiss the cases under Bankruptcy Code Section 1112(b), Noteholder respectfully requests that the Court fashion similar *in rem* relief under Bankruptcy Code Section 105 and retain jurisdiction over the Properties and not dismiss the cases until after the Foreclosures have been completed.

## I. INTRODUCTION

Debtors purport to own the Properties,[1] upon which Properties Noteholder has senior secured deeds of trust to secure in excess of $47 million in loan obligations (the "Loans"). However, Debtors are not Noteholders' borrower. Debtors purport to have acquired title to the Properties in fractional interests for a mere $100,000 on or about September 23, 2016.

---

[1] In *In Re CDC Properties I, LLC* pending before this Court, Case No. 11-41010 (the "CDC Bankruptcy"), Noteholder has filed that certain Motion to Enforce Debtor's Plan of Reorganization (the "Motion to Enforce"), scheduled for hearing before this Court on January 11, 2018. Pursuant to the Motion to Enforce, Noteholder seeks, among other things, a ruling that Debtors' purported acquisition of the Properties from CDC Properties I, LLC ("CDC") violated CDC's confirmed plan of reorganization (the "CDC Plan"), and that CDC's purported transfer of the Properties to Debtors was void, meaning that the Properties are owned by CDC, not by Debtors.

-1-

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

When Debtors purportedly acquired the Properties, the Properties were subject to the Foreclosures, scheduled to occur less than a month later. Just one day before the scheduled Foreclosures, Olympia filed for bankruptcy in New York (the "NY Court") on October 20, 2016. The remaining Debtors filed their own bankruptcies shortly thereafter.

By order entered October 19, 2017 based on detailed finding of fact and conclusions of law issued by the NY Court on September 28, 2017, the NY Court, on Noteholder's motion, dismissed Debtors' New York bankruptcy cases (the "NY Bankruptcies"). Debtors admit that the NY Bankruptcies were dismissed following the exchange of thousands of pages of discovery, several depositions, and two days of evidentiary hearings. The NY Court dismissed the bankruptcies on the court's determination that there was no value available for distribution to unsecured creditors -- let alone equity in the Properties -- and that Debtors could not confirm a plan of reorganization. The court also found that (i) the Loans were in default at the very latest as of Olympia's October 20, 2016 bankruptcy filing, (ii) the Properties were not worth more than $37.5 million,[2] and (iii) even if Debtors "were right on every argument they asserted" regarding the occurrence of prior events of default dating back to 2013 and regarding the calculation of the amount of Noteholder's claim, Noteholder is owed at the very least $39 million, exclusive of reasonable attorneys' fees and other allowable charges, to which the NY Court determined Noteholder is entitled, leaving a deficiency (without considering sales costs related to the Properties and attorneys' fees) in excess of $1.5 million.[3] Under these circumstances, Debtors maintain no equity in the Properties.

After the NY Court dismissed the NY Bankruptcies, Noteholder rescheduled the Foreclosures for December 15, 2017. Continuing with their coordinated effort to thwart Noteholder's legitimate enforcement actions, on December 6, 2017, Debtors filed an action

---

[2] While the NY Court found that the Properties were worth no more than $39 million, there were nine properties at the time of the court's ruling. Since then, one of the Properties (known as "Moses Lake") was sold for $1.5 million (the "Moses Lake Sale"), leaving eight remaining Properties worth no more than $37.5 million.

[3] The calculation of the amount of Noteholder's debt even assuming Debtors were right on every argument they asserted is set forth in Section II(C) below.

-2-

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

SMRH:485085657.2

and motion (the "Injunction Motion") in Washington Superior Court (the "State Court Action") to enjoin the Foreclosures. Noteholder removed the State Court Action to this Court in the CDC Bankruptcy. At a hearing before this Court in the CDC Bankruptcy on December 14, 2017, at which this Court raised the issue of its jurisdiction to decide the Injunction Motion, Debtors argued that the Court should remand the State Court Action because this Court did not have jurisdiction to decide the issues in the State Court Action and only the state court could decide them. However, unbeknownst to Noteholder or this Court, *on December 13, 2017, the day prior to the December 14, 2017 hearing before this Court, Debtors had signed the bankruptcy petitions ultimately filed to commence these cases on December 26, 2017, and Debtors' counsel failed to disclose that Debtors were contemplating filing bankruptcy again and had already signed the petitions*. Moreover, in asking this Court on December 14, 2017 to remand the Injunction Motion -- through which Debtors sought to enjoin the Foreclosures -- Debtors argued that only the state court (and not this Court) has jurisdiction to decide the disputes in the State Court Action and Injunction Motion. However, in their motions in these bankruptcy cases filed December 29, 2017 to extend the automatic stay (the "Stay Extension Motions") (after Noteholder filed its opposition to the Injunction Motion in the State Court Action), *Debtors in blatant forum shopping now take the exact opposite position on whether this Court has jurisdiction to decide the disputes*:

> "This dispute cannot be resolved outside of the Bankruptcy Court's jurisdiction. Without the intervention of the Bankruptcy Court and the attendant stay, the Noteholder will proceed with non-judicial foreclosure."

Dkt. Nos. 21 in each case, 6:7-9.

This Court remanded the State Court Action and, under Bankruptcy Code Section 105, stayed Noteholder from proceeding with the Foreclosures through the to-be-rescheduled hearing on the Injunction Motion in the State Court Action. The Injunction Motion was reset for a December 27, 2019 hearing in the State Court Action, and Noteholder continued the Foreclosures to December 29, 2019. After Noteholder filed its opposition to the Injunction

-3-

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

SMRH:485085657.2

Motion in the afternoon of December 22, 2017, the morning of the very next business day, December 26, 2017, Debtors filed these bankruptcy cases, less than 24 hours before the hearing on the Injunction Motion. As evidenced by entries on the dockets in these pending bankruptcy cases, this Court has determined the Debtors to be "repeat filers".

Notwithstanding Debtors' arguments, Noteholder is owed at least $47 million. The Loans have now matured according to their terms. Debtors have not invested a dime into the Properties nor made payments to Noteholder since Debtors purportedly acquired the Properties over 15 months ago for a mere $100,000. Debtors' ongoing scheme to undermine Noteholder's security interest in the Properties and thwart Noteholder's legitimate collection efforts must be stopped now and Noteholder should be entitled to proceed with the Foreclosures. The (i) undisputed circumstances of Debtors' formation and purported acquisition of the Properties for a mere $100,000 detailed below, together with (ii) Debtors' multiple bankruptcy filings on the eve of the Foreclosures and refusal to invest any money in the Properties beyond the $100,000 acquisition price,[4] and (iii) Debtors' blatant forum shopping described above and below, demonstrate Debtors' bad faith warranting (i) relief from the automatic stay under Bankruptcy Code Sections 362(d)(1) and 362(d)(4), or alternatively (ii) dismissal of these cases under Bankruptcy Code Section 1112(b). Moreover, the same facts and Debtors' lack of equity in the Properties without an ability to reorganize as determined by the NY Court warrant relief from the automatic stay under Bankruptcy Code Section 362(d)(2). Indeed, this Court does not need any evidence to adjudicate this Motion beyond the clear, well-reasoned and thorough ruling of the NY Court – which was issued after more than nine months of litigation, exhaustive discovery and a full evidentiary hearing. Debtors acknowledge in their own misguided Stay Extension Motion, that no circumstances have changed since the ruling of the NY Court and the dismissal of the NY Bankruptcies – with the single exception of Debtors apparently "stiffing" their prior bankruptcy counsel who represented them in the NY Bankruptcies.

---

[4] In fact, as demonstrated by Debtors' List of 20 Largest Creditors Who Have Unsecured Claims and Are Not Insiders, Debtors list their bankruptcy counsel in the New York cases with a claim of $800,000. Not only have Debtors not paid their bankruptcy counsel, but Debtors dispute the claim.

-4-

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

SMRH:485085657.2

Noteholder respectfully requests that the Court grant the Motion under Bankruptcy Code Sections 105 and 362(d), lift the automatic stay (but not dismiss the cases), and provide *in rem* relief, including prohibiting Debtors from taking any action to interfere with the Foreclosures, including without limitation, transferring the Properties or filing further bankruptcy cases. Alternatively, if the Court is inclined to dismiss the cases under Bankruptcy Code Section 1112(b), Noteholder respectfully requests that the Court fashion similar *in rem* relief under Bankruptcy Code Section 105 in order to prevent further abuse of process by the Debtors and retain jurisdiction over the Properties and not dismiss the cases until after the Foreclosures have been completed.

## II. FACTS

**A.** **Debtors Pay $100,000 for the Unlawful Purported Transfer of the Properties.**

These bankruptcy filings are the third last-minute attempt by Debtors to avoid foreclosure sales of the Properties. The Properties were scheduled to be sold at foreclosure sales on October 21, 2016. (Exs. A-H.)[5] At the time those sales were noticed, the Properties were held by CDC Properties I, LLC ("CDC"), the debtor in Case No. 11-41010 pending before this Court (the "CDC Bankruptcy"). Noteholder is the senior secured creditor of CDC pursuant to two loans (the "Loans") whose balance as of their October 17, 2017 maturity date was at least $46,613,166.93. (Exs. I and J.) As discussed in the accompanying Bornheimer Declaration, the Loans have been in default since July 2013. The Loans are secured by Deeds of Trust on the Properties (collectively, the "Deeds of Trust"), which prohibit CDC from conveying the Properties without Noteholders' consent. (Ex. K, p. 72, § 9.02.)

In or around July 2016, counsel for Eric D. Orse ("Orse"), the management representative of CDC, was approached by a representative of certain individuals and entities interested in acquiring the Properties. (Ex. L at 17:19-18:8, 20:5-24.) Those individuals and

---

[5] References to "Ex. __" and "¶ __" refer to the exhibits to the Declaration of David Bornheimer (the "Bornheimer Declaration") filed with this Motion.

-5-

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

SMRH:485085657.2

entities included, among others, Scott G. Switzer, the declarant that Debtors rely upon in support of their Motion who had previously done business with CDC, gone through his own personal bankruptcy, and been investigated by the United States Trustee for bankruptcy fraud. (Ex. M at 67:2-68:10, 73:6-74:8, 348:22-349:21, 351:20-352:9.)  By a September 9, 2016 Purchase Agreement, Orse ultimately agreed with an affiliate of Debtors to transfer the Properties for $100,000.  (Ex. N.)  In connection with negotiating that agreement, Orse's counsel provided the Deeds of Trust and CDC's November 22, 2011 Plan of Reorganization (the "CDC Plan") to Debtors' counsel.  (Ex. O.)  The CDC Plan prohibited CDC from transferring the Properties without repaying the Loans and also required any transfer to be free and clear of liens and encumbrances (Ex. P, p. 20, ¶ 6.), and Orse's counsel specifically identified those prohibitions to Debtors in writing.(Ex. O.)

Notwithstanding the clear prohibitions on transfer in the Deeds of Trust and the CDC Plan, on or around September 23, 2016 Orse provided Debtors with Quit Claim Deeds to the Properties for $100,000 (the "Transfer"), which Quit Claim Deeds conveyed fractional interests in the Properties to Debtors as tenants in common organized in four separate states. (Ex. Q.)  Orse and Debtors did not obtain Noteholder's consent to the Transfer, or provide Noteholder advance notice of the Transfer.  In fact, when the title company handling the Transfer noted the documentary prohibitions on transfer and asked Debtors whether the title company should notify Noteholder, Debtors told the title company not to bring the Transfer to Noteholder's attention.  (Ex. R.)  Further, because the title company told Debtors that the title company would not record the Quit Claim Deeds without, among other things, evidence that the proceeds of the Transfer would be sufficient to pay off all creditors under the CDC Plan, Debtors asked the title company to forward the Quit Claim Deeds to Debtors and Debtors themselves would record them, rather than have to disclose that the sales proceeds were not sufficient to pay creditors.  (Declaration of Rick Wathen filed in the CDC Bankruptcy on December 13, 2017, Dkt. No. 208, Ex. F.)

-6-

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

SMRH:485085657.2

Debtors did not exist until the time of the Transfer. (Exs. OO-RR.) At the time Transfer occurred, Debtors maintained identical assets, had no assets other than the Properties and a few hundred dollars each in cash, had no employees, had no secured creditors besides Noteholder, and had no unsecured creditors other than professionals who engineered the Transfer. (Exs. S-V.) Debtors' only office was their purported principal place of business, the suburban single family home that was found to be the personal residence of a lawyer in New York who assisted with the Transfer and preparation for the filing of the NY Bankruptcies. (Exs. W-Z; AA at 155:21-157:11.)

## B. Debtors File for Bankruptcy on the Eve of Foreclosure.

On October 20, 2016, only Olympia (and none of the other three Debtors) filed for bankruptcy (the "Olympia Bankruptcy") in the NY Court. (Ex. W.) On November 28, 2016, only after the NY Court expressed concern that the Debtors' intent was to file serial bankruptcy filings in four separate jurisdictions, and only on the eve of a hearing before this Court in the CDC Bankruptcy pursuant to which Noteholder was seeking to enforce the CDC Plan and determine that the Transfer was void, the other Debtors filed bankruptcy cases in the NY Court to obtain the protection of the automatic stay for the benefit of all Debtors in order to prevent this Court from ruling on the propriety of the Transfers. (Exs. X-Z.) Debtors and their principals did not contribute any funds to operate the Properties, either in connection with the NY Bankruptcies or otherwise.

In connection with a December 12, 2016 motion filed by Debtors in the NY Bankruptcies to provide post-petition financing life safety repairs and other critical expenditures for the Properties, Debtors' principal Michael Pilevsky agreed to personally guaranty repayment of amounts advanced by a third-party lender and provide cash deposits to secure such guaranty. (Ex. BB at 201:8-24.) Yet when Noteholder offered slightly better financing terms to Debtors for a debtor-in-possession loan, Mr. Pilevsky refused to provide

-7-

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

SMRH:485085657.2

the very same guaranty to Noteholder.  (*Id*. at 203:5-15.)  While the NY Court indicated that it could not do anything regarding Mr. Pilevsky's unwillingness to provide such guaranty, the NY Court commented that it was troubled by this conduct and would remember it at the appropriate time.  That conduct coupled with the refusal of Debtors to invest anything in the Properties above the $100,000 purchase price, are additional evidence of the tainted nature of the Transfer.  The NY Court identified these facts, among others, as indicia of bad faith.

In light of Debtors' scheme to frustrate Noteholder's legitimate enforcement efforts, on January 27, 2017, Noteholder filed a motion to dismiss the NY Bankruptcies.   In opposition to that motion, Debtors argued that they did not owe the full amount of the debt (primarily default interest) because the Loans allegedly did not go into default in July 2013. Debtors further argued that the bondholder reports, which Debtors do not have standing to rely upon and which reflect only principal and servicer fees (and do not include default *or* non-default interest, advances paid by Midland, and other amounts owed), limited Noteholder's recovery to approximately $30 million.  This argument was particularly flawed as these bondholder reports only include amounts due to the underlying bondholders ***after the funding by Noteholder's master servicer of very substantial advances in order to keep the bondholders current notwithstanding the payment default of CDC and the Debtors.*** Debtors make the same arguments in the Injunction Motion pending in the State Court Action and the Stay Extension Motions scheduled for hearing in these cases on January 24, 2018.

## C.    Debtors' Bankruptcies Are Dismissed.

The NY Court rejected each of these arguments when it issued an Order dismissing the NY Bankruptcies on October 19, 2017 (the "Dismissal Order").  (Ex. CC.)  The NY Court issued the Dismissal Order following a detailed oral ruling on September 28, 2017 (the "Dismissal Ruling").[6]  (Ex. DD.)  In the Dismissal Ruling, the NY Court clearly rejected

---

[6] The NY Bankruptcy Court's findings in the Dismissal Ruling upon which Noteholder relies and cites in this Motion are entitled to preclusive effect in this case, as there can be no dispute that:  (i) the parties to the

-8-

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000 FAX: 206.223.7107

Debtors' misguided argument that Noteholder's recovery was limited to approximately $30 million based upon the bondholder reports, by finding that the Loans were in default, interest continued to accrue at approximately $11,200 per day, and, even if the Court determined every one of Debtors' arguments regarding the timing of defaults dating back to 2013 and the calculation of Noteholder's claim were correct, Noteholder was owed exclusive of pre-petition non-default interest at least $36.8 million plus reasonable attorney's fees and other charges as of the Dismissal Ruling.  (*Id.* at 38:24-39:17.)  As determined by the NY Court, even accepting as true all of Debtors' arguments regarding the amount of Noteholder's claim, the interest that will have accrued between the Dismissal Ruling and January 11, 2018 bring this amount to $39,010,328.50, exclusive of reasonable attorneys' fees and other charges that the NY Court determined Noteholder could add to the Loans:

- **$33,000,000.00** [The NY Court's finding as to the pre-petition principal amount]

- **$1,452,358.45** [Pre-petition interest through Olympia's petition date in the Olympia Bankruptcy at the non-default rates.  (Noteholder's Proof of Claim, Claim No. 4-1 in the Olympia Bankruptcy, filed January 31, 2017.)  Even if the default did not occur until Olympia filed bankruptcy in New York, non-default interest accrues whether or not the Loans are in default ***and the accrual of non-default interest was never challenged in the NY Bankruptcies by the Debtors or any other parties notwithstanding extensive claim objection proceedings***]

- **$3,841,600.00** [The NY Court's finding as to interest at the default rates from Olympia's petition date in the Olympia Bankruptcy through September 28, 2017,

---

Dismissal Ruling and this action are the same, (ii) the NY Bankruptcy Court, Debtors' chosen forum, was a court of competent jurisdiction, (iii) the Dismissal Ruling and subsequent Dismissal Order constituted a final judgment on the merits, and (iv) the findings in the Dismissal Ruling upon which Noteholder relies and cites in this Motion are on the same issues, and were decided by the NY Court in the NY Bankruptcies barely three months ago. *Pederson v. Potter*, 103 Wash.App. 62, 69, 11 P.3d 833 (Wash. App. 2000) (citation omitted); *In Re Hathaway*, 401 B.R. 477, 482 (Bankr. Wash. 2009)(quoting *Rein v. Providian Fin. Corp.*, 270 F.3d 895, 899 (9th Cir. 2001).

-9-

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000 FAX: 206.223.7107

SMRH:485085657.2

the date of the NY Court's oral ruling dismissing the NY Bankruptcies. This is 343 days at $11,200 per day]

- **$1,176,000.00** [Interest at the default rates from September 29, 2017 through January 11, 2018, based on the NY Court's formula of $11,200 per day, for 105 days]

- **($459,629.91)** [Two months of principal and interest to be deducted, paid out of sales proceeds of the Moses Lake Sale described in footnote 2 above pursuant to the NY Court order approving the Moses Lake Sale (Ex.EEE.)

- The debtor in possession loan of $420,000 plus interest is not included because that loan was repaid from sales proceeds of the Moses Lake Sale

- **$39,010,328.50** [Total Debt as of July 11, 2018, exclusive of reasonable attorneys' fees (which well exceed $1 million[7]) and other charges to which the NY Court determined Noteholder is entitled]

While the NY Court set a floor for the amounts owed to Noteholder in order to determine whether there was any equity in the Properties, it did not set a cap for those amounts which it acknowledged could be in excess of $44.6 million as of May 1, 2017. (*Id.* at 43:1-10, Exs. EE and FF.) As discussed below, the amount owed on the Loans was properly fixed by at $46,613,166.93 as of October 17, 2017 – the date the Loans matured. (Exs. GG-NN.)

In the Dismissal Ruling, the NY Court further determined that the Properties were worth not more than $39 million (Ex. DD at 42:16-22, 43:11-17). Based on the Moses Lake

---

[7] Debtors' frivolous Stay Extension Motions, the filing of which evidences Debtors' failure to recognize that Bankruptcy Code Section 362(c)(3) has no applicability in these cases since none of the Debtors is an individual, are merely one example of Debtors' improper and unnecessary tactics increasing Noteholder's attorneys' fees.

-10-

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

Sale for $1.5 million, which occurred after the Dismissal Ruling, based on the Dismissal Ruling, the remaining eight Properties are worth no more than $37.5 million after the deduction of the $1.5 million in actual sale proceeds, leaving Noteholder with a deficiency of no less than $1,510,328.50 without even considering Noteholder's reasonable attorneys' fees and other charges to which Noteholder is entitled. In fact, the NY Court repeatedly acknowledged in the Dismissal Ruling that there would be no assets available for unsecured creditors in the NY Bankruptcies, acknowledging that there is no equity in the Properties. (*Id.* at 24:2-6, 43:11-44:7.) The NY Court determined, based thereon, that Debtors could not confirm a plan in the NY Bankruptcies. (*Id.* at 16:7-10; 17:15-20:19; 20:6-8).

Next, while the NY Court stopped short of dismissing the NY Bankruptcies on bad faith grounds, that was not because the NY Court found no bad faith. Rather, the NY Court felt that Debtors had a viable intention of reorganizing *when the case was first filed* (*Id.* at 26:25-27:2). In fact, the Court did determine that Noteholder had presented several crucial "indicia of bad faith" by Debtors (many of which occurred *after* the Olympia Bankruptcy was first filed), including (i) Debtors' acquisition of the Properties in fractional interests on the eve of the first scheduled foreclosure sales, (ii) Debtors' incorporation in four different jurisdictions, (iii) Debtors' refusal to contribute any capital whatsoever to the Properties or the NY Bankruptcies after acquiring the Properties, (iv) Debtors' manufacture of a class of unsecured creditors to create a consenting class for Debtors' proposed (and unconfirmable, as determined by the NY Court) plan, which raised a concern with the NY Court that Debtors did not propose their plan in good faith (and the Debtors continue to manufacture unsecured claims by "stiffing" their New York bankruptcy counsel), (v) Debtors' insiders' failure to adequately capitalize Debtors or provide the same personal guaranty Michael Pilevsky offered to a proposed third party post-petition lender, and (vi) Debtors' motion to substantively consolidate the NY Bankruptcies, which served as additional evidence that Debtors' purported explanation for acquiring the Properties in fractional interests for tax purposes was

-11-

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

a sham and Debtors' intent may have been to file serial bankruptcy cases. (*Id*. at 18:5-10; 20:20-21:5; 24:19-26:1; 26:13-19.) Moreover, as discussed below, several additional crucial indicia of Debtors' bad faith occurred after the NY Court dismissed the NY Bankruptcies.

### D.     **Debtors Act in Bad Faith After the NY Bankruptcies Are Dismissed.**

After the NY Bankruptcies were dismissed, the non-judicial foreclosure sales of the Properties were rescheduled for December 15, 2017. Debtors yet again sought to delay the inevitable sale of the Properties by filing the Injunction Motion in the State Court Action, reviving arguments that were squarely rejected by the NY Court. Noteholder removed the State Court Action and the Injunction Motion to this Court in the CDC Bankruptcy. At a hearing before this Court in the CDC Bankruptcy on December 14, 2017, at which this Court raised the issue of its jurisdiction to decide the Injunction Motion, Debtors argued that the Court should remand the State Court Action because this Court did not have jurisdiction to decide the issues in the State Court Action and only the state court could decide them. However, unbeknownst to Noteholder or this Court, ***Debtors had signed the bankruptcy petitions filed in these cases on December 13, 2017, the day prior to the December 14, 2017 hearing before this Court, and Debtors' counsel failed to disclose that Debtors were contemplating filing bankruptcy again and had already signed the petitions***. Moreover, notwithstanding that in asking this Court to remand the Injunction Motion -- through which Debtors sought to enjoin the Foreclosures -- Debtors argued that only the state court (and not this Court) has jurisdiction to decide the disputes in the State Court Action and Injunction Motion, in their Stay Extension Motions (after Noteholder filed its opposition to the Injunction Motion in the State Court Action), ***Debtors in blatant forum shopping now take the exact opposite position***:

> "This dispute cannot be resolved outside of the Bankruptcy Court's jurisdiction. Without the intervention of the Bankruptcy Court and the attendant stay, the Noteholder will proceed with non-judicial foreclosure."

Dkt. Nos. 21 in each case, page 6:7-9.

-12-

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

This Court remanded the State Court Action and, under Bankruptcy Code Section 105, stayed Noteholder from proceeding with the Foreclosures through the to-be-rescheduled hearing on the Injunction Motion in the State Court Action. The Injunction Motion was reset for a December 27, 2019 hearing in the State Court Action, and Noteholder continued the Foreclosures to December 29, 2019. After Noteholder filed its opposition to the Injunction Motion on December 22, 2017, on the morning of the very next business day, December 26, 2017, Debtors filed these bankruptcy cases, less than 24 hours before the hearing on the Injunction Motion. As evidenced by entries on the dockets, this Court has determined the Debtors to be "repeat filers".

**E.      Noteholder is Owed over $46,613,166.93.**

As set forth in detail in the Bornheimer Declaration, CDC defaulted on the Loans in July 2013. The July 2013 default was never cured. In light of that default, as of October 17, 2017, the date on which the Loans matured, Noteholder was owed at least $46,613,116.93. A detailed accounting of these amounts is set forth in the Bornheimer Declaration and the payoff quotes attached thereto as Exhibits EE and FF.

**III.   DEBTORS FILED AND ARE PROSECUTING THESE CASES IN BAD FAITH, WARRANTING RELIEF FROM THE AUTOMATIC STAY AND DISMISSAL OF THESE CASES FOR CAUSE UNDER BANKRUPTCY CODE SECTIONS 362(d)(1) AND 1112(b)**

Under Bankruptcy Code Section 362(d)(1), on request of a party in interest and after notice and a hearing, the Court shall grant relief from the automatic stay for cause. Under Bankruptcy Code Section 1112(b), on request of a party in interest and after notice and a hearing, the Court shall dismiss or convert a case, whichever is in the best interests of creditors and the estate, for cause.

There is "no substantive difference between the cause requirement for dismissal of a petition under Section 1112(b) and the cause requirement for relief from an automatic stay under Section 362(d)(1)." *In Re Laguna Assocs. Ltd. P'ship*, 30 F.3d 734, 737 (6th Cir.

-13-

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

1994).  Lack of good faith in filing and continuing a chapter 11 case constitutes "cause".  *In Re Copy Crafters Quickprint, Inc.*, 92 B.R. 973 (Bankr. N.D.N.Y. 1988).  "Good faith is an amorphous notion, largely defined by factual inquiry, and based on the totality of the circumstances."  *In Re O'Koreeh-Bach*, 836 F.2d 1030, 1033 (6th Cir. 1988).  Where a secured creditor is seeking relief for cause, alleging that facts presented bring the case within "bad faith filing" is recognized as cause for relief; such cause is an intentionally broad and flexible concept, made so in order to permit courts to respond in equity to inherently fact-intensive situations.  *In Re Sentry Park, Ltd.*, 87 B.R. 427 (Bankr. W.D. Tex. 1988).

While "bad faith filing" inquiries are fact intensive, certain factors support cause for relief based upon a bad faith filing.  These include, but are not limited to, (i) whether the debtors have few unsecured creditors whose claims are small in relation to the claims of secured creditors, (ii) whether the debtors have few or no employees, (iii) whether the property is the subject of a foreclosure action as a result of arrearages of debt, (iv) whether the timing of the bankruptcy filing and other facts evidence an intent to delay or frustrate legitimate enforcement efforts of the secured creditor, and (v) whether the bankruptcy is essentially a two-party dispute between the debtors and the secured lender.  *In Re East-West Associates*, 106 B.R. 767 (S.D.N.Y. 1989); *In Re HBA East, Inc.*, 87 B.R. 248 (Bankr. E.D.N.Y. 1988).

Based on the foregoing factors and the totality of the circumstances, Debtors have proceeded in bad faith in filing and continuing these bankruptcy cases, as all five of the foregoing factors, as well as additional indicia of bad faith, are present.  With respect to the five non-exhaustive factors:

- Debtors purport to have only a few unsecured creditors whose claims pale in comparison to Noteholder's claim.  Even if Debtors are correct on all their arguments as to the amount of Noteholder's claim, Noteholder is owed in excess of $39 million, and the sum of Debtors' unsecured claims (which

-14-

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000 FAX: 206.223.7107

SMRH:485085657.2

include an $800,000 disputed claim held by Debtors' bankruptcy counsel in the NY Bankruptcies manufactured by the Debtors by intentionally not paying these lawyers, , and claims of insiders and professionals who helped Debtors carry out their scheme to delay and defraud Noteholder) is $905,500

- Debtors have no employees.

- The Properties have been the subject of foreclosure sales set for October 21, 2016, December 15, 2017 and December 29, 2017. In each case, Debtors have filed bankruptcies or a state court lawsuit to stop the foreclosures.

- The indicia described in Section II above and below evidence an intent to delay and frustrate Noteholder's legitimate efforts for well over a year now to exercise its rights and remedies with respect to the Properties.

- This dispute is essentially a two-party dispute between Noteholder and Debtors, as Noteholder's claim dwarfs the claims of the other creditors, all of whom are professionals or insiders who may be complicit in Debtors' scheme. Debtors have no other liabilities. Noteholder has a lien on all property of the estates and the other alleged creditors are unsecured. Noteholder is undersecured (pursuant to the determination of the NY Bankruptcy Court approximately three months ago) and none of the other creditors listed on Debtors' 20 Largest lists have appeared in these cases.

Next, notwithstanding that the NY Court did not dismiss the NY Bankruptcies for bad faith at the time Olympia filed bankruptcy, the NY Court found the following indicia of bad faith, many of which occurred after Olympia filed bankruptcy:

-15-

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

- Debtors' acquisition of the Properties in fractional interests on the eve of the first scheduled foreclosure sale for a mere $100,000;[8]

- Debtors' incorporation in four different states;

- Debtors' refusal to contribute any capital whatsoever to the Properties or the NY Bankruptcies after acquiring the Properties (this bad faith occurred after the NY Bankruptcy Cases were filed);

- Debtors' manufacture of a class of unsecured creditors to create a consenting class for Debtors' proposed (and unconfirmable, as determined by the NY Court) plan, which raised a concern with the NY Court that Debtors did not propose their plan in good faith (this bad faith occurred after the NY Bankruptcy Cases were filed);

- Debtors' insiders' failure to adequately capitalize Debtors or offer the same personal guaranty offered to a proposed third party post-petition lender;

- Debtors' motion to substantively consolidate the NY Bankruptcies, which served as additional evidence that Debtors' purported explanation for acquiring the Properties in fractional interests for tax purposes was a sham and Debtors' intent may have been to file serial bankruptcy cases (this bad faith occurred after the NY Bankruptcy Cases were filed).

Moreover, after the NY Court dismissed the NY Bankruptcies, the following additional indicia of bad faith occurred and exist:

- **<u>Debtors Misled this Court</u>**: At the same that Debtors' counsel was arguing on December 14, 2017 that this Court should remand the State Court Action and

---

[8] While not noted specifically in the Dismissal Ruling, with knowledge of the prohibition on transfer of the Properties, Debtors purposely concealed the transfers from Noteholder until after the transfers occurred.

-16-

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

Injunction Motion to the state court, Debtors had already signed the bankruptcy petitions on December 13, 2017 and did not disclose that Debtors were going to file new bankruptcy cases and had already signed petitions;

- **<u>Debtors Have Engaged In Blatant Forum Shopping and Taken Diametrically Opposite Positions</u>**: In their Stay Extension Motions set to be heard January 24, 2018, Debtors stated that the amount of Noteholder's claim and circumstances surrounding CDC's default under the Loans cannot be resolved without the intervention of this Court and the attendant stay. This argument is the ultimate in bad faith given that Debtors made the exact opposite argument in filing the State Court Action and the Injunction Motion, raising precisely therein the amount of Noteholder's claim and the circumstances surrounding CDC's default, and then arguing to this Court on December 14, 2017 in support of its request for remand that this Court did ***not*** have jurisdiction to decide those matters. Debtors' actual intent was bad faith forum shopping. Once Debtors saw Noteholder's opposition to the Injunction Motion filed in the State Court Action on December 22, 2017 refuting Debtors' arguments and pointing the state court to the specific rulings of the NY Bankruptcy Court on the very issues being re-argued, Debtors filed these bankruptcy cases before the hearing on the Injunction Motion.

- **<u>Debtors' Circumstances Have Not Changed Since the NY Bankruptcies Were Dismissed and Debtors Cannot Confirm Any Plan Over Noteholder's Objection</u>**: Debtors filed the Stay Extension Motions because of the presumption of bad faith filings based on Debtors being "repeat filers" as

-17-

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

SMRH:485085657.2

designated by this Court. As is evident from the unambiguous language of Bankruptcy Code Section 362(c)(3), this provision applies only to individual debtors and is inapplicable in these cases. However, Debtors for some unknown reason have moved to extend the automatic stay. In arguing that Debtors can confirm and fully perform a plan based on a substantial change in financial circumstances in their attempt to rebut the presumption of bad faith based on these bankruptcy filings, the only facts to which Debtors point are the sale of Moses Lake and the addition of the $800,000 disputed claim of Debtors' bankruptcy counsel in the NY Bankruptcies manufactured by Debtors by simply deciding not to pay their former bankruptcy lawyers (Stay Extension Motions, 9:6-11). While the sale of Moses Lake resulted in the debtor-in-possession loan being repaid and almost $560,000 being applied to pre-petition interest and principal, as noted above, under the NY Court's findings of fact and conclusions of law, even if Debtors are correct on all of their arguments regarding the amount of Noteholder's claim, Noteholder still has an unsecured deficiency claim of no less than $1.5 million, exclusive of attorneys' fees and other charges. Second, Debtors' citation to the disputed $800,000 claim of their counsel in the NY Bankruptcies is flabbergasting. Putting aside that Debtors dispute the claim, Debtors' "good faith" argument is that they intentionally "stiffed" their bankruptcy counsel, who performed legal services for them for over a year. Moreover, even if the $800,000 claim is valid and the holder of the claim votes to accept a plan proposed by Debtors, Debtors still cannot confirm any plan over Noteholder's vote to reject. As noted above,

-18-

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

Noteholder holds at least a $1.5 million unsecured deficiency claim. Under Bankruptcy Code Section 1126(c), for the unsecured class to accept a plan, creditors holding at least two-thirds in amount of unsecured claims must vote to accept. Even if all unsecured creditors (whose claims total $905,500) voted to accept any plan, if Noteholder voted to reject the plan, based on Noteholder's unsecured deficiency claim of no less than $1.5 million, only 37.6% in dollar amount would be voting to accept, well below the two-thirds threshold. Based thereon, notwithstanding that Bankruptcy Code Section 362(c)(3) is inapplicable in these cases, Debtors' financial circumstances have not changed and Debtors have not demonstrated that they can confirm and fully perform a plan of reorganization. Therefore, the Debtors cannot rebut the presumption that being "repeat filers" and filing these cases less than 3 months after the NY Bankruptcies were dismissed is bad faith.

Based on the foregoing, Debtors have brought and prosecuted these cases in bad faith, which bad faith is cause to lift the automatic stay, or alternatively, dismiss these cases.

-19-

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

SMRH:485085657.2

## IV.  IN REM RELIEF FROM THE AUTOMATIC STAY IS WARRANTED UNDER BANKRUPTCY CODE SECTION 362(d)(4)

Under Bankruptcy Code Section 362(d)(4), relief from stay with respect to real property in favor of a creditor whose claim is secured by such real property is warranted if the court finds that the filing of the petition was part of a scheme to delay, hinder or defraud creditors that involved either (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or (B) multiple bankruptcy filings affecting such real property.  *See also In Re Duncan & Forbes Develop., Inc.*, 368 B.R. 27, 32 (Bankr. C.D. Cal. 2006) (because direct evidence of a scheme to delay, hinder or defraud is rare, the court may infer the existence and contents of an unlawful scheme from circumstantial evidence).  The same facts that constitute cause for relief from the automatic stay under Bankruptcy Code Section 362(d)(1) and cause for dismissal under Bankruptcy Code Section 1112(b) evidence Debtors' scheme to delay and hinder Noteholder's enforcement efforts with respect to the Properties – including the multiple bankruptcy filings which cannot be disputed -- and *in rem* relief from the automatic stay under Bankruptcy Code Section 362(d)(4) with respect to the Properties is warranted.

Noteholder's claims are secured by the Deeds of Trust on the Properties.  Through tortious inducement of CDC and intentional interference with the CDC Plan and the Deeds of Trust, Debtors and their principals caused CDC to transfer the Properties to the Debtors, in fractional interests, without the consent of Noteholder or a court, and in violation of the CDC Plan and Deeds of Trust.  Indeed, the evidence shows that the Debtors actively concealed the Transfer from Noteholder.  In furtherance of their scheme, Debtors and their principals caused multiple bankruptcy filings with respect to the Properties – (i) the NY Bankruptcies filed on October 20, 2016, and following their dismissal, (ii) the pending bankruptcies filed on December 26, 2017, further delaying and hindering Noteholder.  Based thereon, *in rem* relief from the automatic stay with respect to the Properties is warranted under Bankruptcy Code Section 362(d)(4).

-20-

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

## V. RELIEF FROM THE AUTOMATIC STAY IS WARRANTED UNDER BANKRUPTCY CODE SECTION 362(d)(2)

Under Bankruptcy Code Section 362(d)(2), Noteholder also is entitled to relief from the automatic stay to enforce its rights and remedies to the Properties because (i) under Bankruptcy Code Section 362(d)(2)(A), there is no equity in the Properties, and (ii) under Bankruptcy Code Section 362(d)(2)(B), the Properties are not "necessary to an effective reorganization".

### A.  There Is No Equity in the Properties.

In the Dismissal Ruling, the NY Court found that the Properties (which included the Moses Lake Property at that time) are worth no more than $39 million – based upon, among other things, the NY Court's finding that Noteholder's appraisals valuing the Properties at $39 million are "more consistent with the stabilized value as assessed by Midland when there was no litigation in sight". (Ex. DD at 42:16-20.) As set forth in footnote 6 above, this finding, like all of the findings in the Dismissal Ruling, is entitled to preclusive effect. Moreover, as discussed above, after the NY Court issued its Dismissal Ruling, Debtors sold the Moses Lake Property for $1.5 million. Therefore, based on the NY Court's findings, the remaining Properties are worth no more than $37.5 million at this time.

As of October 17, 2017, the maturity of the Loans, Noteholder was owed at least $46,613,116.93, and the balance of the Loans currently exceeds $47 million. However, as set forth above, even relying only upon the NY Court's preclusive finding --that even if Debtors are entirely correct on their arguments regarding when the Loans went into default and the calculation of the amount of Noteholder's claim, Noteholder is owed no less than $39,010,328.50 exclusive of Noteholder's right to reasonable attorneys' fees and other charges -- Noteholder is undersecured in an amount no less than $1,510,328.50. When considering the actual balance of the Loans of $47 million, which is supported by the

-21-

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000 FAX: 206.223.7107

SMRH:485085657.2

Bornheimer Declaration and the exhibits thereto, the deficiency exceeds $9.5 million. Clearly, there is no equity in the Properties.

## B.     The Properties Are Not Necessary to an Effective Reorganization.

If a creditor seeking relief from the automatic stay can effectively veto any plan of reorganization that such creditor votes to reject, the property is not "necessary to an effective reorganization." *In Re RYYZ, LLC*, 490 B.R. 29 (Bankr. E.D.N.Y. 2013) (creditor entitled to relief from stay since remaining unsecured deficiency allowed creditor to block cramdown of debtor's plan by controlling vote of impaired class of unsecured creditors and precluded confirmation of debtor's plan within reasonable time). *See also In Re 266 Wash. Associates*, 141 B.R. 275 (Bankr. E.D.N.Y. 1992) (since plan violates Sections 1122, 1111(b) and 1129(a)(10), it is not confirmable; *In Re Woodridge North Apts., Ltd.*, 71 B.R. 189 (Bankr. N.D. Cal. 1987) (test of whether chapter 11 debtor's property is essential to reorganization under 362(d)(2) is not satisfied if debtor cannot obtain confirmation of plan).

In this case, the NY Court determined that Debtors cannot confirm a plan of reorganization over Noteholder's objection because, among other things, there is no equity available for unsecured creditors (Dismissal Ruling, 16:7-10; 17:15-20:19; 29:6-8). Even considering the "new" $800,000 disputed claim of Debtors' former bankruptcy counsel, if all of Debtors' scheduled unsecured claims are valid and all $905,500 in claims votes to accept any plan of reorganization Debtors propose, Debtors cannot confirm any plan over Noteholder's rejection thereof. As noted above, Noteholder has an unsecured deficiency claim of no less than $1,510,328.50. Debtors cannot put this claim into a class separate from the claims of Debtor's other alleged unsecured creditors and must classify Noteholder's unsecured deficiency claim with the claims of the other unsecured creditors. *In Re 266 Wash. Associates*, 141 B.R. 275 (Bankr. E.D.N.Y. 1992) (there is no valid reason or justification for separately classifying $500,000 unsecured deficiency claim of mortgagee from $26,000 unsecured claims of other creditors where only difference between these claims is size of

-22-

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000 FAX: 206.223.7107

SMRH:485085657.2

claim, which standing alone does not amount to dissimilarity warranting separate classification, and only possible reason which debtor has for separate classification is to fabricate accepting class in order to effectuate cramdown).

Under any plan, there can be only two classes of impaired claims – (1) Noteholder's secured claim; and (2) unsecured claims. Noteholder would be the only creditor in the secured class and of course would control that class. Noteholder would also control the class of unsecured claims (insofar as vetoing a plan) because Noteholder's unsecured deficiency claim exceeds 1/3 of the amount of unsecured claims – namely, Noteholder would hold no less than 62.4% in dollar amount of unsecured claims and all other unsecured creditors would in the aggregate hold no more than 37.6% in dollar amount of unsecured claims. Therefore, under Bankruptcy Code Section 1126(c), which requires 66 2/3% in amount of claims to vote to accept the plan for the class to accept the plan, the unsecured class could not vote to accept any plan if Noteholder voted to reject such plan. If Noteholder voted to reject a plan, there would be no impaired class under such plan voting to accept the plan. Since Bankruptcy Code Section 1129(a)(10) requires that at least one impaired class must vote to accept the plan to obtain confirmation of the plan (even in a cramdown), Debtors cannot possibly confirm a plan of reorganization without Noteholder voting in favor of such plan. As such, the Properties are not necessary to an effective reorganization because Debtors cannot reorganize without Noteholder's consent. Because there is no equity in the Properties and the Properties are not necessary to an effective reorganization, relief from the automatic stay is also warranted under Bankruptcy Code section 362(d)(2).

## VI. **THE COURT SHOULD GRANT THE MOTION AND AWARD IN REM RELIEF**

For the reasons set forth above, both relief from the automatic stay (including *in rem* relief under Bankruptcy Code Section 362(d)(4)), and dismissal, are warranted. Noteholder respectfully requests that in order to prevent further abuse of process by the Debtors, the Court (i) grant this Motion under Bankruptcy Code Sections 105 and 362(d), (ii) lift the

-23-

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

SMRH:485085657.2

automatic stay (but not dismiss the cases), and (iii) provide *in rem* relief, including prohibiting Debtors from taking any action to interfere with the Foreclosures, including without limitation, transferring the Properties or filing further bankruptcy cases. Alternatively, if the Court is inclined to dismiss the cases under Bankruptcy Code Section 1112(b), Noteholder respectfully requests that the Court fashion similar *in rem* relief under Bankruptcy Code Section 105 and retain jurisdiction over the Properties and not dismiss the cases until after the Foreclosures have occurred.

## VII. <u>CONCLUSION</u>

WHEREFORE, Noteholder respectfully requests that the Court grant this Motion and enter the relief requested in the preceding section.

DATED this 3rd day of January, 2018.

LANE POWELL PC

By  */s/ Charles R. Ekberg*
      Charles R. Ekberg, WSBA No. 00342
      James B. Zack, WSBA No. 48122
Attorneys for MLMT 2005-MCP1 Washington
Office Properties, LLC

SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP

By  */s/ Alan M. Feld*
      Alan M. Feld, *pro hac vice*
Attorneys for MLMT 2005-MCP1 Washington
Office Properties, LLC

-24-

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

SMRH:485085657.2