HONORABLE BRIAN D. LYNCH
Chapter 11
Hearing Date: January 18, 2018
Hearing Time: 9:30 a.m.
Courtroom: Tacoma, Room I
Resp. Date: January 11, 2018

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

In re:

OLYMPIA OFFICE, LLC;
WA PORTFOLIO, LLC;
MARINERS PORTFOLIO, LLC; and
SEAHAWK PORTFOLIO, LLC,

Debtors.

Case No. 17-44721-BDL-Lead Case
(Jointly Administered)[1]

**MLMT2005-MCP1 WASHINGTON OFFICE PROPERTIES, LLC'S REPLY IN SUPPORT OF MOTION UNDER BANKRUPTCY CODE SECTIONS 105, 362(d)(1), 362(d)(2), 362(d)(4) AND 1112(b) FOR RELIEF FROM THE AUTOMATIC STAY OR IN THE ALTERNATIVE FOR DISMISSAL OF BANKRUPTCY CASES**

---

[1] In Re Olympia Office LLC is Case No. 17-44721-BDL; In re WA Portfolio LLC is Case No. 17-44722-BDL; In Re Mariners Portfolio LLC is Case No. 17-44723-BDL; In Re Seahawk Portfolio is Case No. 17-44724-BDL.

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

SMRH:485189532.2

Secured Creditor MLMT 2005-MCP1 Washington Office Properties, LLC ("Noteholder") files this reply in support of its Motion Under Bankruptcy Code Sections 105, 362(d)(1), 362(d)(2), 362(d)(4) and 1112(b) for Relief From the Automatic Stay or in the Alternative for Dismissal of Bankruptcy Cases (the "Motion").[2] In their opposition to the Motion, Debtors fail to rebut Noteholder's entitlement to relief from stay or dismissal. For the reasons set forth in the Motion and below, Noteholder requests that the Court grant the Motion, lift the automatic stay and provide *in rem* relief, including prohibiting Debtors from taking any action to interfere with the Foreclosures, including without limitation, transferring the Properties or filing further bankruptcy cases.

## I. INTRODUCTION

Contrary to Debtors' arguments in their 26-page opposition to the Motion, this Court does not have to decide whether Debtors filed the NY Bankruptcies (as opposed to the pending bankruptcy cases (the "Pending Bankruptcies")) in bad faith, whether the Loans are currently in default, when Noteholder became entitled to default interest, the actual amount of Noteholder's claim, or the value of the Properties based on competing appraisals. On all of the foregoing issues except whether Debtors filed the Pending Bankruptcies in bad faith (which, of course, were commenced subsequent to the NY Court's entry of the Dismissal Order), the NY Court made res judicata findings, and this Court need only review the NY Court's Dismissal Ruling to determine that this Motion should be granted. Following the exchange of thousands of pages of discovery, nearly a dozen lengthy depositions, and a full evidentiary hearing, the New York Court found, among other things, that:

- "The Debtors have never contended that the notes were not in default as of the petition date or entitled to post-petition default interest. Thus, since at least October 20 of 2016 when Olympia filed, post-petition interest would have been accruing at approximately $11,200 per day; 343 days from the petition date to today [September 28, 2017] means that an aggregate amount of just

---

[2] Undefined terms herein have the same definitions set forth in the Motion.

-1-

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

SMRH:485189532.2

Case 17-44721-BDL    Doc 72    Filed 01/15/18    Ent. 01/15/18 17:36:22    Pg. 2 of 14

post-petition default interest of $3,841,600 has accrued while these cases sat in Chapter 11." [Dismissal Ruling, Bornheimer Dec., Ex. DD, 38:24-39:6][3]

- "Thus, if the Debtors were absolutely right on every argument that they asserted with respect to the timing and occurrence and cause of default under the CDC plan, and if they had the legal standing to argue that Midland breached the CDC plan by allocating available funds to sub-account reserves and account reserves rather than the plan payment, Noteholder would now be owed at least $36.8 million, plus reasonable attorneys' fees and other allowable charges, plus the $420,000 that was actually advanced by the Noteholder post-petition as the DIP lender, plus allowable interest the Court's Order authorizing the DIP loan." [39:7-17][4]

- "Thus, at this juncture, the Properties would have to be worth at least $39 million to cover the Noteholder's claims and provide for even minimal cost of selling the properties with modest brokerage commissions before there was any chance of any funds being available for other creditors, including administrative claimants. Again, that would require that the debtor be 100 percent correct on their allegations as to when did they begin to be in default, and [whether] the debtors have legal standing to assert those claims to the extent that they constitute a claim of breach of the CDC plan, which this court is not finding or determining today as it is not necessary to the outcome as I've announced it." [39:18-40:4]

- "Therefore, the Court has determined that it is more likely that the properties do not have a current value of more than $39 million, which is more consistent with the stabilized value as assessed by Midland when there was not litigation in sight at the time they were preparing for the foreclosures. This is a "no apparent more than" valuation; that is not a value boundary." [42:16-22]

- " . . . the properties would be barely worth . . . not more than the value ascribed by the Court of $39 million which would render the Noteholder slightly undersecured at the petition date in the amount adequate to control Class 2." [43:14-17][5]

---

[3] As set forth in the Motion (10:4-6), an additional $1,176,000.00 in default interest accrued between September 29, 2017 and January 11, 2018. Between January 12, 2018 and January 18, 2018 (the date of the hearing on this Motion), an additional $78,400 in default interest will have accrued. As further set forth in the Motion (9:14-22), because non-default interest accrued whether or not the Loans are in default, Noteholder's claim also includes pre-petition (vis a vis the NY Bankruptcies) non default interest of $1,452,358.45.

[4] As set forth in the Motion (10:7-13), Noteholder has actually deducted from its claim, proceeds that it received out of the sale of the Moses Lake Property, which proceeds were applied to repayment of the DIP loan and two debt service payments pursuant to a stipulated sale order issued by the NY Court.

[5] While the NY Court set a "not more than" value of the Properties of $39 million, as set forth in the Motion (10:25-11:4), that value included the Moses Lake Property, which was subsequently sold for $1.5 million, leaving a value of the remaining Properties of not more than $37.5 million. With a claim of no less than $39,088,728.50 as of January 18, 2018 even if Debtors are 100% correct in their assertions, Noteholder has an

-2-

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

SMRH:485189532.2

As detailed in the Motion, Noteholder is entitled to relief from stay or dismissal *even if Debtors are 100% correct on their assertions*. As set forth above, in the Dismissal Ruling, the NY Court set a floor for the amount of Noteholder's debt (assuming the validity of all of Debtors' arguments) and a ceiling for the value of the Properties, which demonstrates not only that Noteholder is undersecured, but that Noteholder would control the class of unsecured creditors with its deficiency claim under any plan that Debtors propose. If Debtors (the identical parties to the NY Bankruptcies) took or take issue with the Dismissal Ruling, their remedy is not to collaterally attack and mischaracterize the Dismissal Ruling as they do in their opposition, but to appeal the Dismissal Ruling and Dismissal Order. Debtors have not done so, their time to do so has expired, and the Dismissal Ruling and Dismissal Order have become a final, res judicata judgment. Based on the NY Court's findings in the Dismissal Ruling, even if Debtors are correct on their arguments, Noteholder is entitled to relief from stay under Bankruptcy Code Section 362(d)(2).

Moreover, as detailed in the Motion and below, the only circumstances that have changed since the NY Bankruptcies were dismissed only strengthen Noteholder's entitlement to relief from stay or dismissal – Noteholder's claim has continued to increase at $11,200 per day plus additional fees and costs, Debtors have submitted no new evidence of value of the Properties since the NY Bankruptcies were dismissed,[6] the Loans have matured, and Debtors have engaged in additional conduct since filing the NY Bankruptcies demonstrating that they filed the Pending Bankruptcies in bad faith (Motion, 16:5-17:24; and Section II below). Thus, Noteholder is also entitled to relief from stay, dismissal, and *in rem* relief under Bankruptcy

---

unsecured deficiency claim of at least $1,588,728.50, exclusive of reasonable attorneys' fee and other charges, to which the NY Court determined Noteholder is entitled.

[6] Debtors admit in their bankruptcy schedules that they have not obtained appraisals of the Properties within the last year. Debtors submitted with their opposition to the Motion the same appraisals they submitted in the NY Bankruptcies, which appraisals, along with the appraisals submitted by Noteholder, were considered by the NY Court in determining the "not more than" value of the Properties. Thus, the most current value of the Properties is the NY Court's determination in the Dismissal Ruling, which took into account the appraisals submitted by Debtors in opposition to this Motion.

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

SMRH:485189532.2

Code Sections 105, 362(d)(1), 362(d)(4) and 1112(b) based on Debtors' bad faith filing of the Pending Bankruptcies.

## II. BECAUSE DEBTORS FILED THE PENDING BANKRUPTCIES IN BAD FAITH, NOTEHOLDER IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY, *IN REM* RELIEF, AND DISMISSAL UNDER BANKRUPTCY CODE SECTIONS 105, 362(d)(1), 362(d)(4) AND 1112(b)

Because the NY Court determined that there is no equity in the Properties based on the floor the NY Court established as to Noteholder's claim and the ceiling the NY Court established as to the value of the Properties, and therefore Debtors cannot reorganize or confirm any plan over Noteholder's objection (Dismissal Ruling, 16:7-10; 17:15-20:19; 20:6-8; 24:2-6; 43:11-44:7), the NY Court dismissed the NY Bankruptcies without having to determine whether Debtors acted in bad faith in filing the NY Bankruptcies. The NY Court did indeed state that *at the time Debtors filed the NY Bankruptcies* they had a viable intent to reorganize, but nonetheless (i) the NY Court cited numerous indicia of Debtors' bad faith, many of which occurred *after* Debtors filed the NY Bankruptcies, and (ii) as noted in the preceding sentence, notwithstanding Debtors' "viable intent" at the time they filed the NY Bankruptcies, in dismissing the NY Bankruptcies the NY Court determined that Debtors in fact could not reorganize (or for that matter, confirm any plan). At the time Debtors filed the Pending Bankruptcies, Debtors did not have a viable intent of reorganizing (or confirming any plan). That fact, together with the indicia of bad faith cited by the NY Court (Motion, 11:11-12:3; 14:20-16:23) and the additional bad faith conduct by Debtors after the NY Bankruptcies were dismissed (Motion, 16:23-19:16) demonstrate that Debtors filed the Pending Bankruptcies in bad faith.

As reflected in the following chart, Debtors' attempts to rebut their bad faith, including those based on alleged changed circumstances, are neither accurate nor persuasive, and are completely lacking in merit:

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

SMRH:485189532.2

Case 17-44721-BDL    Doc 72    Filed 01/15/18    Ent. 01/15/18 17:36:22    Pg. 5 of 14

| **Debtors' Contention** | **Actual Facts** |
|---|---|
| The $100,000 purchase price for the Properties is not evidence of bad faith because Debtors acquired the Properties subject to "a large, multi-million dollar debt obligation" [21:11-15][7] | Debtors believe that there is at least $10 million in equity in the Properties. [23:6-7] Paying $100,000 for $10 million in equity is bad faith. |
| Moving to substantively consolidate the NY Bankruptcies is evidence of good faith because Debtors moved to substantively consolidate in response to the NY Court's expressed concern in successive bankruptcy petitions. [21:16-18] | The NY Court expressed concern because Olympia filed its NY Bankruptcy by itself, not because the NY Bankruptcies were not substantively consolidated. The timing of the filing of the petitions is different than moving for substantive consolidation. Moving for substantive consolidation was bad faith because it revealed that the testimony of Michael Pilevsky that the four separate Debtors were formed for tax purposes was a sham given that through substantive consolidation, Debtors no longer were keeping themselves separate. And Debtors' intent was to file serial bankruptcy filings, as evidenced by the fact that Olympia filed its petition by itself. The only reason the other Debtors subsequently filed together was to stay a motion before this Court in the CDC Case to enforce the CDC Plan and determine that the purported transfers of the Properties to Debtors were void under the CDC Plan. |
| Debtors state that while the NY Court expressed concern that Debtors manufactured a class of unsecured creditors, it refused to find the class was manufactured, citing page 21 of the Dismissal Ruling. [21:21-22 and note 4] | Nothing on page 21 of the Dismissal Ruling indicates that the NY Court refused to find the class was manufactured. What the NY Court stated was "The Court is significantly concerned then about an effort by the debtors to manufacture a class of general unsecured creditors to then be voting and apparent consenting class to carry confirmation of the plan . . " [Dismissal Ruling, 20:20-24] |
| "Debtors were also preparing to file bankruptcy should no relief be granted – that | After initially telling this Court in connection with remanding the state court |

---

[7] Citations without a source are to Debtors' opposition to the Motion.

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

SMRH:485189532.2

| | |
|---|---|
| was the only way to protect the property from the unproven debt and nonjudicial foreclosure aggressively pursued by Noteholder." [17:17-19] "It became clear Noteholder . . . would only use the state court action, even with a stay, as an excuse to increase its one-sided assessment of the amount owed." [17:22-18:2] | action that only the state court, and not this Court, had jurisdiction to resolve the dispute over the amount of Noteholder's claim, Debtors completely reversed their position (now contending that *only* this Court, and not the state court, has jurisdiction – Motion, 3:18-24) after seeing Noteholder's opposition to Debtors' preliminary injunction motion. Moreover, contrary to Debtors' justification for filing bankruptcy before the state court action could rule on the relief requested by Debtors, Noteholder's claim will continue to accrue whether or not Debtors are in bankruptcy. |
| Filing bankruptcy on the eve of foreclosure is not bad faith. [18:16-20] | Noteholder does not contend that such fact alone constitutes bad faith. First, there is all the additional evidence of bad faith. Second, Debtors took the same action a second time, after their first cases were dismissed, constituting multiple filings. |
| Forming Debtors right before filing bankruptcy is not bad faith. [19:4-15] | The bad faith is not just that Debtors were formed right before filing bankruptcy. Debtors were formed in four jurisdictions to acquire fractional interests in the Properties, purportedly for tax purposes (later revealed to be a sham when Debtors moved to substantively consolidate), with the intent of serial bankruptcy filings, all while intentionally concealing the acquisition of the Properties from Noteholder. |
| This is not a two-party dispute because Debtors have other creditors, including its former counsel with a claim of $838,000, accounting professionals and consultants. [19:16-19] | The NY Court already expressed its concern that the claims of Debtors' other alleged creditors were manufactured and all related to helping Debtors carry out their scheme. With respect to Debtors' former counsel, creating a claim by failing to pay their former bankruptcy counsel is itself evidence of bad faith. Further, Debtors themselves contend that such claim is not even valid, as Debtors dispute it in their schedules and List of 20 Largest Creditors. |
| The value of the Properties has increased. | In the Dismissal Ruling, the NY Court set |

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

SMRH:485189532.2

Case 17-44721-BDL    Doc 72    Filed 01/15/18    Ent. 01/15/18 17:36:22    Pg. 7 of 14

| | |
|---|---|
| [12:10-13:3] | the ceiling on the value of the Properties at $39 million ($37.5 million now since Moses Lake was subsequently sold for $1.5 million). There is no evidence before this Court of the value of the Properties after the issuance of the Dismissal Ruling. Debtors have proffered appraisals from 2016, over a year ago, but (i) the NY Court took those appraisals into account in reaching its conclusions, and (ii) Debtors admit in their schedules that the Properties have not been appraised in the last year. |
| "Debtors purchased ownership interests in the Properties with the intent to work with the loan servicer, Midland, and the Noteholder to cure the previous owner's purported payment issues" [19:7-9] | Prior to acquiring the Properties, Debtors reviewed, among other things, Noteholder's notices of default in the chain of title setting forth Noteholder's entitlement to default interest dating back to 2013, and stating amounts owed well in excess of the bondholder reports. If Debtors believed the notices of default were incorrect, the time to work with Noteholder was before Debtors acquired the Properties. In fact, in internal communications produced in discovery in the NY Bankruptcies, Debtors admitted that the outstanding debt exceeded the value of the Properties and that there was no equity in the Properties. Knowing that Noteholder would not consent to the transfer of the Properties and the CDC Court would not approve the transfer without paying off Noteholder and CDC's other creditors, however, Debtors in bad faith not only did not approach Noteholders, but actively concealed their scheme from Noteholder. [Motion, 6:18-29] |
| "The principal and interest payments are being paid on a current monthly basis and continue to be paid." [Switzer Dec., Dkt. No. 59, par. 38, 11:2-3] "This does not consider the approximately $500,000 payment made to Midland in September/October 2017 without approval or notification to the Debtors. [*Id.*, 11:9-11] | Mr. Switzer's testimony is perjurious. Principal and interest payments are not being paid to Noteholder. Noteholder never received any payments without approval or notification to Debtors. While Noteholder did receive some of the proceeds of the Moses Lake property sale, and applied $459,629.91 to principal and interest, that was done pursuant to a court order issued by |

-7-

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

SMRH:485189532.2

Case 17-44721-BDL    Doc 72    Filed 01/15/18    Ent. 01/15/18 17:36:22    Pg. 8 of 14

the NY Court based upon the agreement of Noteholder and Debtors (Motion, 10:7-10; Bornheimer Dec, Ex. EEE]

Moreover, Debtors' conduct falls squarely within Bankruptcy Code Sections 362(d)(4)(A) and (B), thereby warranting *in rem* relief. Since before Debtors acquired the Properties in September 2016, as detailed in the Motion and above, Debtors have engaged in a scheme for almost 16 months to delay and hinder Noteholder from legitimately exercising its rights and remedies involving both (i) purported transfer of the Properties to Debtors without the knowledge (let alone the consent) of Noteholder or court approval, and (ii) multiple (i.e., more than one) bankruptcy filings affecting the Properties – the NY Bankruptcies and the Pending Bankruptcies. In fact, this Court has deemed Debtors to be "repeat filers". Further, Debtors filed the Pending Bankruptcies in a different bankruptcy court, an implicit admission that the NY Court would not have concluded that there were changed circumstances warranting a different outcome. Based on the foregoing, Debtors have filed the Pending Bankruptcies in bad faith and Noteholder is entitled to relief from stay, *in rem* relief, and dismissal under Bankruptcy Code Sections 105, 362(d)(1), 362(d)(4) and 1112(b).

## III. RELIEF FROM THE AUTOMATIC STAY IS ALSO WARRANTED UNDER BANKRUPTCY CODE SECTION 362(d)(2)

Relief from the automatic stay is also warranted under Bankruptcy Code Section 362(d)(2) because there is no equity in the Properties and the Properties are not necessary to an effective reorganization.

**A. There Is No Equity in the Properties**

1. **Noteholder's Claim is No Less Than $39,088,728.50**

As set forth in the Motion (9:13-10:16), and updating Noteholder's claim to January 18, 2018, exclusive of attorney's fees and other charges to which the NY Court determined Noteholder is entitled, without taking into account costs of sale, and accepting 100% of

-8-

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

SMRH:485189532.2

Case 17-44721-BDL    Doc 72    Filed 01/15/18    Ent. 01/15/18 17:36:22    Pg. 9 of 14

Debtors' arguments as to the amount of Noteholder's claim (including when the Loans went into default, whether and when default interest began to accrue, the significance of the bondholder reports,[8] etc.),[9] Noteholder's claim based on the NY Court's findings is not less than $39,088,728.50.

Debtors challenge whether a default under the Loans ever occurred and whether Noteholder ever became entitled to default interest. However, as noted above in the Introduction, these issues were resolved by the NY Court in the Dismissal Ruling – (i) the Loans went into default at the latest on October 20, 2016 when Olympia filed its NY Bankruptcy, (ii) Noteholder became entitled to default interest at the latest on that same date, and (iii) Debtors never contended that the Loans were not in default as of October 20, 2016 or that Noteholder was not entitled to post-petition default interest. If Debtors did not agree with the NY Court, they should have appealed the Dismissal Ruling and the Dismissal Order, rather than seeking to collaterally attack them. In addition, as of October 17, 2017, the Loans have matured by their own terms.

---

[8] The bondholder reports show only amounts actually owed to bondholders after certain advances made by the master servicer to keep the bondholders current, not amounts owed by CDC under the actual loan documents on account of the Loans. The amounts owed to bondholders by Noteholder – which is the securitization trust and the actual lender – has nothing to do with the amount owned under the loan documents. The master servicer makes protective advances, including advances of interest payments not paid by CDC as well as other amounts to protect the interests of bondholders and the underlying collateral. The only effect of these advances is that the bondholders are kept current. Such advances have nothing to do with the amounts that CDC owes under the loan documents. In light of these advances made to bondholders, the bondholder reports reflect only outstanding principal on the Loans because the master servicer keeps bondholders current even though CDC is in default and not current on the Loans. Contrary to Debtors' implication, the expectation is that these advances will eventually be repaid and certainly not intended as a gift to CDC or Debtors in the form of forgiveness of interest and other protective advances for taxes and other expenses just because the master servicer is paying those amounts current to bondholders. The only contractual documents that govern the relationship between Noteholder and CDC are the actual loan documents. The transactions between Noteholder and the bondholders have absolutely no impact on CDC's obligations and neither CDC nor the Debtors are beneficiaries of such transactions. All outstanding and unpaid amounts under the governing loan documents remain the contractual obligation of CDC.

[9] As set forth in the Bornheimer Declaration submitted in support of the Motion, Debtors are not correct on their arguments as to the amount of Noteholder's claim and Noteholder is actually owed in excess of $46,613,166.93. However, to grant this Motion and provide the relief requested by Noteholder, the Court need not determine that Noteholder's claim is more than the $39,088,728.50 that assumes Debtors are 100% correct on their arguments. Moreover, now that the Loans have matured, whatever the amount owed, Debtors cannot cure the default other than to repay the Loans in full.

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

SMRH:485189532.2

Moreover, Debtors do not even have standing to challenge the amount of Noteholder's claim. Since Debtors are not the Borrowers on the Loans, they are not in contractual privity with Noteholder, and acquired the Properties without notice to or the consent of Noteholder. Because Noteholder cannot be compelled to accept the Debtors as Noteholder's borrower, Debtors lack standing to assert challenges to Noteholder's claim. *See Pescrillo v. HSBC Bank USA, N.A.*, 2015 WL 417659 (W.D.N.Y. 1/30/15) (where borrower transferred property to non-borrower debtor and debtor filed bankruptcy on eve of foreclosure, "a debtor has no right to restructure mortgages in bankruptcy when the debtor is not in privity with the mortgagee"). While the NY Court had ruled prior to the Dismissal Ruling that Debtors would have standing to propose a chapter 11 plan, it expressly distinguished standing to propose a plan from standing to challenge a claim where the debtor has no contractual privity with the lender -- in the Dismissal Ruling the NY Court expressly stated that Debtors very well may not have standing to challenge the nature of the defaults under the Loans and the amount of Noteholder's claim, but that the NY Court is not deciding that issue because doing so is not necessary to the outcome of the Dismissal Ruling. [Dismissal Ruling, 39:9-12; 39:25-40:4]

Further, based on unclean hands and estoppel, Debtors cannot challenge the amount of Noteholder's claims. As set forth above, based on the notices of default that Noteholder had issued and Debtors' internal communications produced during discovery which acknowledged that the outstanding debt exceeded the value of the Properties, Debtors knew the amount of the claim asserted by Noteholder, which was well in excess of the principal amount set forth in the bondholder reports and the value of the Properties. Yet, not only did Debtors not approach Noteholder to discuss the Loans prior to acquiring the Properties from CDC, but they actively concealed the transfer from Noteholder.

2. **The Properties Are Worth No More Than $37,500,000**

As noted above, the NY Court determined that the value of the Properties is no more than $39 million. If Debtors did not agree with that finding, they should have appealed

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

SMRH:485189532.2

the Dismissal Ruling and the Dismissal Order, which they did not do. When subtracting the $1.5 million in sales proceeds from the Moses Lake property, which sale took place after the Dismissal Ruling, the value of the Properties is no more than $37.5 million. Moreover, the only evidence of value Debtors proffer in opposition to the Motion is appraisals of the Properties from over a year ago, predating the Dismissal Ruling. In fact, the NY Court considered the appraisals that Debtors now proffer in reaching its value conclusion. Based on the foregoing, as of January 18, 2018, exclusive of attorneys' fees and other charges to which the NY Court determined Noteholder is entitled and costs of sale, and assuming that Debtors are 100% correct on their arguments regarding the amount of Noteholder's claim, considering only Noteholder's claim (and not the claims of other creditors), Debtors actually have negative equity in the Properties in the amount of $1,588,728.50.

### B. The Properties Are Not Necessary to an Effective Reorganization

First, notwithstanding arguments to the contrary in their opposition, Debtors admit that they are not going to reorganize: "Debtors anticipate proposing a liquidating plan here" (Declaration of Scott G. Switzer (Debtors' COO) filed December 29, 2017, Dkt. No. 20, 3:5). Given that Debtors are not going to reorganize, the Properties are not necessary to an effective reorganization.

Moreover, Noteholder's deficiency claim, even assuming Debtors are correct on 100% of their arguments, is even larger than as set forth in the Motion because there is an additional week of interest. As set forth in the Motion (22:3-24:23), because Noteholder would control any class of unsecured creditors and therefore Debtors cannot confirm any plan without Noteholder's consent, the Properties cannot be necessary to an effective reorganization. Since there is no equity in the Properties and the Properties are not necessary to an effective reorganization, Noteholder is also entitled to relief from stay under Bankruptcy Code Section 362(d)(2).

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

SMRH:485189532.2

## IV. CONCLUSION

For the reasons set forth in the Motion and above, both relief from the automatic stay (including *in rem* relief under Bankruptcy Code Section 362(d)(4)), and dismissal, are warranted. Noteholder respectfully requests that in order to prevent further abuse of process by the Debtors, the Court (i) grant this Motion under Bankruptcy Code Sections 105 and 362(d), (ii) lift the automatic stay (but not dismiss the cases), and (iii) provide *in rem* relief, including prohibiting Debtors from taking any action to interfere with the Foreclosures, including without limitation, transferring the Properties or filing further bankruptcy cases. Alternatively, if the Court is inclined to dismiss the cases under Bankruptcy Code Section 1112(b), Noteholder respectfully requests that the Court fashion similar *in rem* relief under Bankruptcy Code Section 105 and retain jurisdiction over the Properties and not dismiss the cases until after the Foreclosures have occurred.

DATED this 15th day of January, 2018.

LANE POWELL PC

By /s/ *Charles R. Ekberg*
Charles R. Ekberg, WSBA No. 00342
James Zack
Alan Fed, Cal. Bar No. 155345*
Theodore Cohen, Cal Bar No 155427**
afeld@sheppardmullin.com
tcohen@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071
Telephone: 213-620-1780
Facsimile: 213-620-1398

*Admitted Pro Hac Vice
**Pro Hac Vice Pending
Attorneys for MLMT 2005-MCP1 Washington Office Properties

-12-

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

SMRH:485189532.2

Case 17-44721-BDL    Doc 72    Filed 01/15/18    Ent. 01/15/18 17:36:22    Pg. 13 of 14

## CERTIFICATE OF SERVICE

I certify that on the date indicated below, I caused the foregoing document to be presented to the Clerk of the Court for filing and uploading to the CM/ECF system. In accordance with their ECF registration agreement and the Court's rules, the Clerk of the Court will send e-mail notification of such filing to the ECF recipients of record.

I affirm under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

SIGNED January 15, 2018, at Los Angeles, California.

/s/ *Shadi Mahmoudi*
Shadi Mahmoudi, Esq.

-13-

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

SMRH:485189532.2

Case 17-44721-BDL   Doc 72   Filed 01/15/18   Ent. 01/15/18 17:36:22   Pg. 14 of 14