CHIEF JUDGE BRYAN D. LYNCH
Chapter 11
Hearing Date: January 24, 2018
Hearing Time: 9:00 a.m.
Courtroom: Tacoma, Room 1
Response Deadline: January 17, 2018

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>OLYMPIA OFFICE LLC;<br>WA PORTFOLIO LLC;<br>MARINERS PORTFOLIO LLC; and<br>SEAHAWK PORTFOLIO LLC<br><br><br>Debtors. | Case No. 17-44721-BDL-Lead Case |

**MLMT 2005-MCP1 WASHINGTON OFFICE PROPERTIES, LLC'S RESPONSE TO THE DEBTORS' MOTION TO TERMINATE THE PRE-PETITION COURT APPOINTED RECEIVER AND TO ALLOW THE PRE-PETITION COURT APPOINTED RECEIVER TO REMAIN IN PLACE**

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

Case 17-44721-BDL    Doc 86    Filed 01/17/18    Ent. 01/17/18 17:52:02    Pg. 1 of 15

Secured Creditor MLMT 2005-MCP1 Washington Office Properties, LLC ("Noteholder"), through its undersigned counsel, objects to the Debtors' motion (the "Motion") to: (a) terminate JSH Properties, Inc. (the "Receiver") as the pre-petition court appointed receiver, and directing the Receiver to turnover to the Debtors (i) possession and control of the Properties,[1] (ii) cash in the Receiver's accounts related to the Properties, and (iii) books and records related to the Properties; and (b) authorize the Debtors to remit payments to be applied to debtor-in-possession financing or principal amounts owed to Noteholder. Noteholder further requests that the Court, pursuant to Section 543(d), excuse compliance with Bankruptcy Code Section 543(a), (b), and (c), and to allow the Receiver to remain in place in these cases.

## I. INTRODUCTION

Like these cases and Debtors' recently dismissed New York bankruptcy cases, Debtors' motion to terminate the Receiver is a desperate cash grab. Debtors purportedly acquired the Properties for a mere $100,000 in September 2016 through a transfer that was made in fractional interests on the eve of a long scheduled foreclosure sale. Since the purported transfer, Debtors have filed multiple bankruptcies to avoid the foreclosure sale of the Properties, and have refused to invest any money in the Properties beyond the $100,000 acquisition price. Debtors have repeatedly sought to loot any value from the Properties, by filing motions in their dismissed New York bankruptcy, Washington State court, and this Court, in which they have sought to, among other things, avoid the foreclosure sale of the Properties, reduce Noteholder's secured and matured debt, remove the Receiver that was put in place to remedy gross mismanagement by CDC, grab the cash being held by the Receiver, and replace the Receiver with their own property manager that would not have the fiduciary and other obligations imposed upon the Receiver by the Court that appointed the Receiver. Debtors also refused to fund or guarantee debtor in possession financing for necessary life safety repairs that Noteholder ultimately funded at the outset of the New York bankruptcy. Under these circumstances, the turnover of the Properties to the Debtors is inappropriate.

Debtors also do not provide definite terms for their proposed retention of Kidder Mathews. Debtors' proposal to employ Kidder Mathews as property manager should be rejected as it is beholden

---

[1] The Properties consist of eight office properties in Washington State that the Debtors purportedly acquired for a mere $100,000 from the Management Representative of CDC Properties I, LLC ("CDC"), another Debtor whose bankruptcy proceedings are pending before this Court.

NOTEHOLDER'S OBJECTION TO DEBTORS' MOTION TO TERMINATE THE RECEIVER– 1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

Case 17-44721-BDL    Doc 86    Filed 01/17/18    Ent. 01/17/18 17:52:02    Pg. 2 of 15

to Debtors, having acted as Debtors' appraiser in the New York bankruptcy cases and these cases, and having been proposed by the Debtors as the real estate broker for the liquidation of the Properties.

Debtors also should not be permitted to take possession of the Properties from the Receiver for the reasons set forth in Noteholder's January 3, 2018 Motion for Relief From the Automatic Stay or in the Alternative for Dismissal (the "Motion for RFS/to Dismiss") [Dkt. No. 30]. As set forth in that motion, Debtors are prosecuting these cases in bad faith, Debtors maintain no equity in the Properties, and the Properties are not necessary to an effective reorganization that is in prospect. These facts entitle Noteholder to relief from the automatic stay or dismissal to enable Noteholder to foreclose on the Properties and finally extricate Debtors from the Properties in the wake of their improper purported transfer. Under these circumstances, the Receiver, who has been in place for nearly two years and has a substantial working knowledge with respect to the Properties and an extremely positive relationship with the tenants, should remain in place as the Receiver is in the best position to maintain the value of the Properties for the benefit of Noteholder and all other creditors of the Debtors' estates.

## II. FACTS

**A.  Noteholder Commences Foreclosure Sales and Obtains an Order Appointing the Receiver**

These bankruptcy filings are the third last-minute attempt by Debtors to avoid foreclosure sales of the Properties. On March 11, 2016, Noteholder commenced non-judicial foreclosure proceedings of the Properties by issuing Notices of Default with respect to each of the Properties. The Properties were scheduled to be sold at foreclosure sales on October 21, 2016. (Exs. A-H.)[2] At the time those sales were noticed, the Properties were held by CDC, the reorganized debtor in Case No. 11-41010 pending before this Court (the "CDC Bankruptcy"). Noteholder is the senior secured creditor of CDC pursuant to two loans (the "Loans") whose balance as of their October 17, 2017 maturity date was at least $46,613,166.93. (Exs. I and J.) As discussed in the Bornheimer Declaration, the Loans have been in default since July 2013. The Loans are secured by Deeds of Trust on the Properties (collectively, the "Deeds of Trust"), which prohibit CDC from conveying the Properties without Noteholders' consent. (Ex. K, p. 72, § 9.02.)

---

[2] References to "Ex. __" and "¶ __" refer to the exhibits to the January 2, 2018 Declaration of David Bornheimer (the "Bornheimer Declaration") [Dkt. No. 31] filed in support of the Motion for RFS/to Dismiss.

NOTEHOLDER'S OBJECTION TO DEBTORS' MOTION TO TERMINATE THE RECEIVER– 2

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

In May, 2016, Noteholder filed a Petition to Appoint Custodial Receiver in King County, Washington Superior Court (the "State Court") to, obtain the appointment of a receiver over the Properties. On May 19, 2016, the State Court entered an Order Appointing Custodial Receiver (the "Receiver Order"), pursuant to which the Receiver was appointed. (Appendix 38-56.) When the Receiver was appointed, the Properties were in severe disarray and disrepair due to the delinquent management of the principals of CDC. As set forth in the Receiver Order, at the time the Receiver was appointed the revenue-producing potential of the Properties had been impaired and Noteholder's interest in the Properties was in danger of being lost or materially impaired. (*Id.* at §§ 1.9, 1.10.) Pursuant to the Receiver Order, the Receiver is authorized to, among other things, maintain possession of the Properties, manage the Properties, collect rents from the Properties, and negotiate leases for the Properties. (*Id.* at §§ 3.3.1, 3.3.2, 3.3.3, 3.4.4.) The Receiver Order also set forth the compensation that the Receiver is entitled to for its services. (*Id.*)

**B.  Debtors Pay $100,000 for the Unlawful Purported Transfer of the Properties**

After the Receiver was appointed, in or around July 2016, counsel for Eric D. Orse ("Orse"), the management representative of CDC, was approached by a representative of certain individuals and entities interested in acquiring the Properties. (Ex. L at 17:19-18:8, 20:5-24.) Those individuals and entities included, among others, Scott G. Switzer, the declarant that Debtors rely upon in support of their Motion who had previously done business with CDC and is a known quantity to the bankruptcy courts.[3] (Ex. M at 67:2-68:10, 73:6-74:8, 348:22-349:21, 351:20-352:9.) By a September 9, 2016 Purchase Agreement, Orse ultimately agreed with an affiliate of Debtors to transfer the Properties for $100,000. (Ex. N.) In connection with negotiating that agreement, Orse's counsel provided the Deeds of Trust and CDC's November 22, 2011 Plan of Reorganization (the "CDC Plan") to Debtors' counsel. (Ex. O.) The CDC Plan prohibited CDC from transferring the Properties without repaying the Loans and also required any transfer to be free and clear of liens and encumbrances (Ex. P, p. 20, ¶ 6.), and Orse's counsel specifically identified those prohibitions to Debtors in writing. (Ex. O.)

---

[3] A search of the Western District of Washington Bankruptcy Court PACER system identifies Switzer's own Chapter 7 bankruptcy (Case No. 11-22708-TWD), as well as four other cases in which Switzer was named as a defendant: *United States Trustee, et al. v. Switzer* (Case No. 12-01427-TWD); *Rigby, et al. v. Hazelrigg, III, et al.* (Case No. 10-01134-MLB); *Banner Bank v. Funsters Grand Casino Inc., et al.* (Case No. 02-01600-PHB); and *Definitive Audio Inc. v. Funsters Grand Casino Inc., et al.* (Case No. 02-01568-PHB).

NOTEHOLDER'S OBJECTION TO DEBTORS' MOTION TO TERMINATE THE RECEIVER– 3

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

Case 17-44721-BDL    Doc 86    Filed 01/17/18    Ent. 01/17/18 17:52:02    Pg. 4 of 15

Notwithstanding the clear prohibitions on transfer in the Deeds of Trust and the CDC Plan, on or around September 23, 2016 Orse provided Debtors with Quit Claim Deeds to the Properties for $100,000 (the "Transfer"), which Quit Claim Deeds conveyed fractional interests in the Properties to Debtors as tenants in common organized in four separate states. (Ex. Q.) Debtors did not exist until the time of the Transfer. (Exs. OO-RR.) At the time Transfer occurred, Debtors maintained identical assets, had no assets other than the Properties and a few hundred dollars each in cash, had no employees, had no secured creditors besides Noteholder, and had no unsecured creditors other than professionals who engineered the Transfer. (Exs. S-V.)

C. **Debtors File for Bankruptcy on the Eve of Foreclosure**

On October 20, 2016, Olympia filed a Chapter 11 petition in the Eastern District of New York (the "NY Court"). (Ex. W.) On November 28, 2016 the other Transferees filed Chapter 11 cases in the NY Court (together with the Olympia Bankruptcy, the "NY Bankruptcies"). (Exs. X-Z.) Transferees and their principals did not contribute any funds to operate the Properties, either in connection with the NY Bankruptcies or otherwise.

In connection with a December 12, 2016 motion filed by Debtors in the NY Bankruptcies to obtain $420,000 in post-petition financing for life safety repairs and other critical expenditures for the Properties, Debtors' principal Michael Pilevsky agreed to personally guaranty repayment of amounts advanced by a third-party lender and provide cash deposits to secure such guaranty. (Ex. BB at 201:8-24.) Yet when Noteholder offered slightly better financing terms to Debtors for a debtor-in-possession loan, Mr. Pilevsky refused to provide the very same guaranty to Noteholder. (*Id.* at 203:5-15.) That conduct coupled with the refusal of Debtors to invest anything in the Properties above the $100,000 purchase price, are additional evidence of the tainted nature of the Transfer. The NY Court identified these facts, among others, as indicia of bad faith by the Debtors. In light of Debtors' scheme to frustrate Noteholder's legitimate enforcement efforts, on January 27, 2017, Noteholder filed a motion to dismiss the NY Bankruptcies.

D. **Debtors' NY Bankruptcies Are Dismissed**

The NY Court issued an Order dismissing the NY Bankruptcies on October 19, 2017 (the "Dismissal Order"). (Ex. CC.) The NY Court issued the Dismissal Order following a detailed oral ruling on September 28, 2017 (the "Dismissal Ruling"). (Ex. DD.) In the Dismissal Ruling, the NY

NOTEHOLDER'S OBJECTION TO DEBTORS' MOTION TO TERMINATE THE RECEIVER– 4

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

Case 17-44721-BDL    Doc 86    Filed 01/17/18    Ent. 01/17/18 17:52:02    Pg. 5 of 15

Court rejected Debtors' argument that Noteholder's recovery was limited to approximately $30 million, by finding that the Loans were in default, interest continued to accrue at approximately $11,200 per day, and, even if the Court determined every one of Debtors' arguments were correct, Noteholder was owed at least $37.2 million plus reasonable attorney's fees and other charges as of the Dismissal Ruling. (*Id*. at 38:24-39:17.) Those fees and the interest that will have accrued between the Dismissal Ruling and the foreclosure sales brings this amount to an undisputable $39.2 million. While the NY Court set a floor for the amounts owed to Noteholder, it did not set a cap for those amounts which it acknowledged could be in excess of $44.6 million as of May 1, 2017. (*Id.* at 43:1-10, Exs. EE and FF.) The amount owed on the Loans was properly fixed by Noteholder at $46,613,166.93 as of October 17, 2017 – the date the Loans matured pursuant to their terms. (Exs. GG-NN.)

In the Dismissal Ruling, the NY Court further determined that the Properties were worth not more than $39 million (Ex. DD at 42:16-22, 43:11-17), far less than the nearly $42 million valuation Debtors claim. In fact, the NY Court repeatedly acknowledged in the Dismissal Ruling that there would be no assets available for unsecured creditors in the NY Bankruptcies, acknowledging that there is no equity in the Properties. (*Id.* at 24:2-6, 43:11-44:7.) Further, while the NY Court stopped short of dismissing the NY Bankruptcies on bad faith grounds, the Court did determine that Noteholder had presented several "indicia of bad faith" by Debtors, including (i) Debtors' acquisition of the Properties in fractional interests on the eve of the first scheduled foreclosure sales, (ii) Debtors' incorporation in four different jurisdictions, (iii) Debtors' refusal to contribute any capital whatsoever to the Properties or the NY Bankruptcies after acquiring the Properties, (iv) Debtors' manufacture of a class of unsecured creditors to create a consenting class for Debtors' proposed (and unconfirmable, as determined by the NY Court) plan, which raised a concern with the NY Court that Debtors did not propose their plan in good faith (and the Debtors continue to manufacture unsecured claims by "stiffing" their New York bankruptcy counsel), (v) Debtors' insiders' failure to adequately capitalize Debtors or provide the same personal guaranty Michael Pilevsky offered to a proposed third party post-petition lender, and (vi) Debtors' motion to substantively consolidate the NY Bankruptcies, which served as additional evidence that Debtors' purported explanation for acquiring the Properties in fractional interests for tax purposes was a sham and Debtors' intent may have been to file serial bankruptcy cases. (*Id*. at 18:5-10; 20:20-21:5; 24:19-26:1; 26:13-19.)

NOTEHOLDER'S OBJECTION TO DEBTORS' MOTION TO TERMINATE THE RECEIVER– 5

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

Case 17-44721-BDL    Doc 86    Filed 01/17/18    Ent. 01/17/18 17:52:02    Pg. 6 of 15

### E. Debtors Act in Bad Faith After the NY Bankruptcies Are Dismissed

After the NY Bankruptcies were dismissed, the non-judicial foreclosure sales of the Properties were rescheduled for December 15, 2017. Debtors yet again sought to delay the inevitable sale of the Properties by filing a motion to enjoin the foreclosures in King County Superior Court, reviving arguments that were squarely rejected by the NY Court. Noteholder removed the action and the preliminary injunction to this Court in the CDC Bankruptcy. At a hearing before this Court in the CDC Bankruptcy on December 14, 2017, at which this Court raised the issue of its jurisdiction to decide the preliminary injunction motion, Debtors argued that the Court should remand the action because this Court did not have jurisdiction. However, unbeknownst to Noteholder or this Court, Debtors had signed the bankruptcy petitions filed in these cases on December 13, 2017, the day prior to the December 14, 2017 hearing before this Court, and Debtors' counsel failed to disclose that Debtors were contemplating filing bankruptcy again and had already signed the petitions.

This Court remanded the preliminary injunction motion and action to state court and, under Bankruptcy Code Section 105, stayed Noteholder from proceeding with the foreclosure sales through the to-be-rescheduled hearing on the injunction motion, which was reset for a December 27, 2017. Noteholder continued the foreclosures to December 29, 2017. After Noteholder filed its opposition to the injunction motion on December 22, 2017, on the morning of the very next business day, December 26, 2017, Debtors filed these bankruptcy cases, less than 24 hours before the scheduled hearing. As evidenced by entries on the dockets, this Court has determined the Debtors to be "repeat filers".

### F. The Receiver's Competent Management of the Properties

Throughout the chaos wrought by the Debtors' misconduct, the Receiver has competently and steadfastly managed the Properties for the benefit of the Debtors and their creditors pursuant to the Receiver Order. In fact, Debtors twice entered into stipulations (the "Receiver Stipulations") with Noteholder and the Receiver that permitted the Receiver to remain in place under the terms detailed in the Receiver Order during the entire pendency of the NY Bankruptcies. (*See* Appendix 58-69, and Switzer Declaration, Ex. D.) In the second of the Receiver Stipulations, the Receiver and Debtors agreed that the Receiver would limit its fees to the Property Manager Fee provided for in the Receiver Order, and Construction Management Fees and Leasing Commissions under specific and narrow

NOTEHOLDER'S OBJECTION TO DEBTORS' MOTION TO TERMINATE THE RECEIVER– 6

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

Case 17-44721-BDL    Doc 86    Filed 01/17/18    Ent. 01/17/18 17:52:02    Pg. 7 of 15

circumstances.[4] (*Id.*) Since the Receiver's engagement nearly two years ago, the Receiver has successfully worked to stabilize the Properties by performing necessary life safety repairs, identifying replacement tenants for vacant Properties, extending existing tenant leases, and completing tenant improvements necessary to obtain and retain those tenants. (January 16, 2018 Declaration of Edward Velton (the "Velton Declaration) at ¶ 3 [Dkt. No. 30].) Throughout this work, the Receiver has been confronted with nervous tenants who have been concerned about the condition of the Properties, the improper transfers to the Debtors, the uncertainty concerning ownership of the Properties, and the Debtors' NY Bankruptcy filings. (*Id.* at ¶ 4.) Notwithstanding these issues, as a result of the Receiver's earnest stewardship of the Properties, the Receiver now maintains $1,741,111.84 in cash as of January 11, 2018, as opposed to the near nominal cash position that required the Debtors to seek $420,000 in post-petition financing at the outset of the NY Bankruptcies. (*Id.* at ¶ 6.) As set forth below, these funds are necessary for critical tenant improvements and repairs to be conducted in connection with lease renewals for existing tenants and potential new tenants.

In addition to improving the cash position of the Properties, the Receiver has made significant progress in negotiating lease extensions with tenants in three of the Properties whose leases are expiring in the near term. As the Debtors admit in the Switzer Declaration in support of their motion (at ¶ 4), "several large leases are up for renewal which will significantly affect both the income and valuation of" the Properties. These leases include the properties at 4565 7th Avenue in Lacey ("7th Avenue"), 805 South Mission Street in Wenatchee ("Mission Street"), and 640 and 645 Woodland Square Loop in Lacey (collectively, "Woodland Square"). (Velton Declaration, Ex. A.) In order to complete these lease extensions, the tenants have required certain near-term improvements that will cost substantially more than the cash currently held by the Receiver. These costs include: approximately $2.4 million to re-stack the three tenants in 7th Avenue in order to secure 5 and 10 year lease extensions from each of those tenants; approximately $1.3 million in improvements to Mission Street to secure a 10 year lease extension from the single tenant occupying that building; and approximately $200,000 to complete work on vacant space in 640 Woodland Square that was infested with mold when the Receiver took possession of the Properties but will now be occupied by the tenant that is presently leasing space in that property.

---

[4] Noteholder understands that the Receiver is willing to continue with its engagement pursuant to these terms, to which Debtors previously agreed.

NOTEHOLDER'S OBJECTION TO DEBTORS' MOTION TO TERMINATE THE RECEIVER– 7

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

Case 17-44721-BDL    Doc 86    Filed 01/17/18    Ent. 01/17/18 17:52:02    Pg. 8 of 15

(*Id.*)  Thus, in addition to the $1,741,111.84 the Receiver is currently holding, the Receiver may need substantial additional funds that very likely will not be procured entirely through the Properties' net operating income.  As Debtors admit, the negotiation of these leases and renewals/extensions, which require approximately $3.7 million in tenant improvements to close, is critical to the long term financial health of the Properties.  As such, the Receiver's ongoing involvement in these negotiations, and its continued stewardship of these Properties, is critical to the preservation of the Properties' value for the benefit of all parties.

## III. ARGUMENT

**A.  The Court Should Not Terminate the Receiver's Engagement or Require Receiver to Turn Over the Properties to the Debtors, and Should Authorize the Receiver to Remain in Place and Excuse Compliance with the Requirements of Section 543(a) and (b)**

The Debtors' claim that the Receiver no longer has legal authority over the Properties after dismissal of the NY Bankruptcies is meritless.  After the dismissal of the NY Bankruptcies, the Receiver remained and remains in place pursuant to with the Receiver Order, as the Receiver Stipulations kept the Receiver in place pursuant to the terms of the Receiver Order.  As a result, the Receiver Order was never terminated.  Even if the Receiver Order had been terminated or modified in connection with the NY Bankruptcies or otherwise, the dismissal of the NY Bankruptcies automatically reinstated the Receiver pursuant to the unmodified terms of the Receiver Order.  *See* 11 U.S.C. § 349(b)(1)(A).  As such, When Debtors filed their second set of Chapter 11 petitions on December 26, 2017, the Receiver became a "custodian" under the Bankruptcy Code.  11 U.S.C. § 101(11)(A) ("The term 'custodian' means — (A) receiver or trustee of any property of the debtor, appointed in a case or proceeding not under this title[.]").  Generally, a custodian-in-possession is required to deliver all debtor assets within his custody and control to the trustee or the debtor in possession, following commencement of the case. 11 U.S.C. § 543(b)(1).

However, a bankruptcy court may excuse compliance with the turnover provisions of section 543 if "the interest of creditors . . . would be better served by permitting a custodian to continue in possession, custody or control of such property[.]"  11 U.S.C. § 543(d)(1); *see also In re Si Yeon Park, Ltd*., 198 B.R. 956, 963-64 (Bankr. C.D. Cal. 1996) ("It is up to the bankruptcy court to decide, in its discretion, whether the receiver should be excused from turning over assets of the bankruptcy estate, under standards of federal law set forth in § 543.").  "The interests of the debtor, however, are not part

NOTEHOLDER'S OBJECTION TO DEBTORS' MOTION TO TERMINATE THE RECEIVER– 8

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

of the criteria considered when applying section 543(d)(1)." *Dill v. Dime Savings Bank, FSB (In re Dill)*, 163 B.R. 221, 225 (E.D.N.Y.1994) (citing 4 Collier on Bankruptcy, ¶ 543.05 at 543–12 (15th Ed. 1993) ("section 543(d)(1) does not require an analysis of the interests of the debtor").

A determination under Section 543(d) is fact-intensive, and courts consider a number of factors, including, (a) whether the debtor will use the property in question for the benefit of the creditors, (b) whether there has been mismanagement by the debtor, and (c) whether there will be sufficient income to fund a successful reorganization. *In re Orchards Village Invs., LLC*, 405 B.R. 341, 352 (Bankr. D. Ore. 2009). Section 543(d) is "intended to provide flexibility when there is no useful purpose to be served by turnover." *In re Plantation Inn Partners*, 142 B.R. 561, 564 (Bankr. S.D. Ga. 1992). Essentially, the analysis "turn[s] upon whether the assets of the particular debtor should be administered by the existing custodian or returned to the debtor." *See In re Uno Broadcasting Corp.*, 167 B.R. 189, 200 (Bankr. D. Ariz. 1994).

Noteholder understands that the Receiver is prepared to remain as the Receiver subject to the entry of an order, which excuses it from compliance with section 543. In light of the Receiver's conduct in connection with the NY Bankruptcies and its nearly two year management of the Properties, the Receiver will certainly be able to maintain and manage the Properties at a high standard for the benefit of all parties. As set forth above, the Receiver has developed a substantial working knowledge of the operations of the Properties and positive relationship with the tenants by managing the Properties and is integral to the ongoing negotiations regarding lease extensions for the Properties and the required tenant improvements associated therewith. For the following reasons, it is in the best interests of creditors and the estates for this Court to deny the Debtors' Motion to terminate the Receiver, and enter an order preserving the status quo and excusing the Receiver from the turnover provisions of Section 543 of the Bankruptcy Code. Throughout the chaos and turmoil caused by Debtors' shenanigans, the only constant has been the Receiver's management of the Properties. It should be allowed to remain in place so as not to add to the confusion.

1. **The Receiver Is in the Best Position to Maintain the Value of the Properties for the Benefit of Creditors**

In *Uno Broadcasting*, the bankruptcy court for the District of Oregon concluded that the interests of creditors were best served by the receiver's retention of estate property:

NOTEHOLDER'S OBJECTION TO DEBTORS' MOTION TO TERMINATE THE RECEIVER– 9

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

Case 17-44721-BDL    Doc 86    Filed 01/17/18    Ent. 01/17/18 17:52:02    Pg. 10 of 15

> In this case, it is not difficult to conclude that the assets of the Debtor should remain in the hands of the Receiver. The evidence suggests that the Receiver has been proceeding expeditiously and professionally to manage the affairs of the Debtor. The Receiver has begun to deal with seriously delinquent obligations to the Internal Revenue Service, has reorganized management, has implemented accounting controls, has contacted and dealt with numerous vendors and has taken certain personnel actions. . . . [T]his Court is satisfied, as was the District Court, that the Receiver is proceeding appropriately and expeditiously in handling the affairs of the estate.

*Uno Broadcasting*, 167 B.R. 189 at 200.

Similar to the receiver in *Uno Broadcasting*, the Receiver in this case has been effectively managing the affairs and finances of the Property, and has been working diligently to maintain value and operate the Properties. Specifically, since its appointment on May 19, 2016 and throughout the pendency of the NY Bankruptcies and thereafter, the Receiver has been and is, among other things, significantly engaged in numerous in-process projects in connection with the Properties, including the rehabilitation and stabilization of the Properties, ongoing lease negotiations with existing and prospective new tenants, and the required tenant improvements associated therewith.

Requiring turnover would risk jeopardizing the value that the Receiver has worked diligently since its appointment in May 2016 to preserve and create, which would in turn harm all the stakeholders in this Chapter 11 case. *Orchards Village*, 405 B.R. at 353 (allowing the receiver to remain in place because he had substantially improved the operations of the receivership property during his tenure).

**2. Debtors Are Not Qualified to Manage the Properties**

On the other hand, the operation of the Properties by the Debtors or by Kidder Mathews, Debtors' proposed property management company, could be disastrous for Noteholder and other creditors of the Debtors. *Uno Broadcasting*, 167 B.R. at 201 (noting that there was a risk of "substantial disruption, duplication, costs, and confusion" if receiver was terminated). Due to the Receiver being appointed before Debtors allegedly acquired the Properties from CDC and the Debtors never having managed the Properties, the Debtors lack any experience in operating or maintaining the Properties. Terminating the Receiver and inserting a new property management company in its place with no experience with the Properties could result in a sharp reduction in lease revenue and lack of maintenance

NOTEHOLDER'S OBJECTION TO DEBTORS' MOTION TO TERMINATE THE RECEIVER– 10

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

Case 17-44721-BDL    Doc 86    Filed 01/17/18    Ent. 01/17/18 17:52:02    Pg. 11 of 15

on the Properties, as was the case when the Receiver took possession of the Properties nearly two years ago.

The purported cost savings by employing Kidder Mathews rather than the Receiver would be miniscule compared to the loss of value to the estate, particularly in light of the fact that Debtors have not provided any evidence of a firm commitment by Kidder Mathews to provide property management services at the rates outlined in the Debtors' Motion, and the Receiver's willingness to continue to provide services for the reduced fee amounts outlined in the Receiver Stipulations, to which Debtors agreed thereunder. Additionally, the Debtors have indicated that Kidder Matthews is preparing updated appraisals for use in connection with these proceedings. (*See* Dkt. No. 60, Ex. I.) Kidder Matthews cannot be allowed to serve as the Debtors' property manager while also engaged as a potential expert witness. Further, termination of the Receiver would result in a lack of oversight and control by a fiduciary, especially if Debtors took over operation of the Properties and control of the cash flow. This is particularly relevant given the long-history of misconduct by the Debtors, which is set forth in detail above and in the Motion for RFS/to Dismiss, and includes the Debtors' purchase of the Properties in fractional interests as tenants in common each organized in different states for $100,000, filing of the prior bankruptcy on the eve of foreclosure, refusal to fund necessary health and safety repairs, and continued misconduct in connection with these bankruptcy cases. The Debtors failure to invest a single dollar in the Properties beyond their initial $100,000 purchase price, demonstrates that Debtors are not fit or qualified to oversee management of the Properties and their operations – and seek turnover by the Receiver primarily to grab the cash on hand which is all necessary for critical work to be done on the Properties in connection with leasing activity.

Given the Receiver's proven success in managing and operating the Properties, it is most prudent, and in the best interest of the creditors, for the Receiver to continue in possession and control of the Properties. Indeed, Debtors surely recognized the value of the Receiver when they twice entered into the Receiver Stipulations retaining the Receiver during the entire year-long pendency of the NY Bankruptcies. In light of the Debtors' continuing misconduct with respect to the Properties, and the Receiver's successful operation of the Properties for a sustained period of time, requiring the Receiver to turn over the Properties to Debtors would subject creditors to the unnecessary risk that the Properties' will revert to their derelict status before the Receiver's appointment.

NOTEHOLDER'S OBJECTION TO DEBTORS' MOTION TO TERMINATE THE RECEIVER– 11

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

Case 17-44721-BDL    Doc 86    Filed 01/17/18    Ent. 01/17/18 17:52:02    Pg. 12 of 15

### 3. Debtors Have Not Cured Their Defaults and Cannot Reorganize

Regarding the availability of income to fund a successful reorganization, the court in *Orchards Village* considered how prepetition funds were used in light of mortgage, insurance, tax and other obligations. *Orchard Village*, 405 B.R. at 353. Further, in denying turnover and deciding to retain the receiver, the court in *Orchard Village* noted specifically that none of the loan defaults had been cured. *Id.* Here, the appointment of the Receiver in May 2016 was triggered by CDC's default on the Loans and the impending foreclosure sale of the Properties. As set forth above and in the Motion for RFS/to Dismiss, the Debtors have yet to cure the defaults under the Loans which the NY Court found in the Dismissal Ruling had occurred at least as of the filing of the NY Bankruptcies. In fact, the Loans have now matured in accordance with their terms, and the only way to cure the defaults under the Loans is for the Debtors to pay them in full.

Moreover, the Debtors have indicated that they do not intend to reorganize, but rather plan to liquidate the Properties—the Debtors' only purported asset. As no reorganization is contemplated, the Properties and any income from them should not be turned over to the Debtors, particularly in light of the Receiver's ongoing competent management of the cash generated by the Properties, which is necessary for the impending tenant improvement expenses required to stabilize the Properties. As set forth above, maintaining the status quo of the Receiver and its long expertise and experience with the operations of the Properties is in the best interests of creditors.

### B. The Funds Maintained by the Receiver are Earmarked for Necessary Tenant Improvements and Repairs

While Noteholder would certainly like to use the funds maintained by the Receiver to pay down the over $46 million outstanding debt owed to Noteholder pursuant to the Loans, as set forth above, these funds are earmarked for tenant improvements and repairs that are necessary for the ongoing financial health and physical safety of the Properties. In light of these significant anticipated expenses, the Receiver should be permitted to retain the funds maintained in its accounts for the benefit of the Properties, and turnover should not be ordered.

NOTEHOLDER'S OBJECTION TO DEBTORS' MOTION TO TERMINATE THE RECEIVER– 12

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

Case 17-44721-BDL    Doc 86    Filed 01/17/18    Ent. 01/17/18 17:52:02    Pg. 13 of 15

## IV. CONCLUSION

WHEREFORE, Noteholder respectfully requests that the Court deny the Debtors' Motion and enter an Order in the form attached hereto as Exhibit A.

.DATED this 17th day of January, 2018.

        LANE POWELL PC

        By /s/ *Charles R. Ekberg*
           Charles R. Ekberg, WSBA No. 00342

           Alan M. Feld, Cal. Bar No. 155345*
           afeld@sheppardmullin.com
           SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
           333 South Hope Street, 43rd Floor
           Los Angeles, California 90071
           Telephone: 213-620-1780
           Facsimile: 213-620-1398
           *Pro hac vice
        Attorneys for MLMT 2005-MCP1 Washington Office Properties

NOTEHOLDER'S OBJECTION TO DEBTORS' MOTION TO TERMINATE THE RECEIVER– 13

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

Case 17-44721-BDL    Doc 86    Filed 01/17/18    Ent. 01/17/18 17:52:02    Pg. 14 of 15

## **CERTIFICATE OF SERVICE**

I certify that on the date indicated below, I caused the foregoing document to be presented to the Clerk of the Court for filing and uploading to the CM/ECF system. In accordance with their ECF registration agreement and the Court's rules, the Clerk of the Court will send e-mail notification of such filing to the ECF recipients of record.

I affirm under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

SIGNED January 17, 2018, at Los Angeles, California.

/s/ *Shadi Mahmoudi*
Shadi Mahmoudi, Esq.

NOTEHOLDER'S OBJECTION TO DEBTORS' MOTION TO TERMINATE THE RECEIVER– 14

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

Case 17-44721-BDL    Doc 86    Filed 01/17/18    Ent. 01/17/18 17:52:02    Pg. 15 of 15